J-E04003-14

2015 PA Super 138

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellant | |
| v. | |
| JERMEEL OMAR TYSON | |
| Appellee | No. 1292 MDA 2013 |

Appeal from the Order June 18, 2013
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0005578-2012

BEFORE:  GANTMAN, P.J., FORD ELLIOTT, P.J.E., BENDER, P.J.E.,
         PANELLA, J., DONOHUE, J., SHOGAN, J., MUNDY, J., OLSON, J.,
         and OTT, J.

OPINION BY GANTMAN, P.J.:                          **FILED JUNE 10, 2015**

Appellant, the Commonwealth of Pennsylvania, appeals from the order entered in the Berks County Court of Common Pleas, which denied the Commonwealth's motion *in limine* to introduce at trial Appellee Jermeel Omar Tyson's prior conviction and granted Appellee's corresponding motion *in limine* to exclude this evidence. We reverse and remand for further proceedings.

The relevant facts and procedural history of this case are as follows. On July 31, 2010, G.B. left work because she felt ill after donating plasma. G.B. asked Appellee, whom she knew casually, to bring her some food. Appellee arrived at G.B.'s apartment and stayed as she fell asleep. During the early morning hours of August 1, 2010, G.B. claims she awoke to find Appellee having vaginal intercourse with her. Appellee told G.B. she had

taken her pants off for him. G.B. claims she told Appellee to stop, and he complied. After falling back asleep, G.B. woke again later that night and went into her kitchen, where she allegedly found Appellee naked. G.B. claims she told Appellee she did not want to have sex with him and returned to bed. Shortly thereafter, G.B. claims, she woke up; and Appellee was again having vaginal intercourse with her. G.B. told Appellee to stop and asked him what he was doing. Appellee told G.B. her eyes were open the whole time. G.B. told Appellee to leave her apartment. G.B. then went to a hospital for treatment.

The Commonwealth charged Appellee with rape, sexual assault, indecent assault, and aggravated indecent assault. On May 31, 2013, the Commonwealth filed a motion *in limine*, which sought to introduce evidence of Appellee's 2001 conviction for rape in Delaware, pursuant to Pa.R.E. 404(b).[1] The Commonwealth's motion *in limine* was premised on two theories: (1) Appellee's prior rape conviction is admissible to show his rape and assault of G.B. was part of a common scheme or plan; and (2) the prior conviction is admissible to show Appellee did not "mistakenly" conclude G.B. "consented" to sexual intercourse with him. On June 3, 2013, Appellee filed

---

[1] On July 16, 2000, Appellee was at a party at the home of T.B. Appellee was a friend of T.B.'s brother. T.B. drank alcohol at the party and went to sleep in her bedroom at approximately 5:00 a.m. She later awoke to find Appellee having vaginal intercourse with her. Appellee pled guilty to rape on June 11, 2001, and spent five years in prison.

a motion *in limine* seeking to preclude his prior rape conviction.

Following a hearing, the trial court denied the Commonwealth's motion *in limine*, granted Appellee's motion *in limine*, and on June 18, 2013, declared Appellee's prior conviction inadmissible. On July 18, 2013, the Commonwealth filed a timely notice of appeal.[2] By memorandum decision on April 21, 2014, a panel of this Court (with one dissent) affirmed the trial court's order of June 18, 2013. On July 3, 2014, this Court granted the Commonwealth's application for *en banc* reargument and withdrew the prior memorandum decision.

The Commonwealth raises one issue for *en banc* review:

> DID THE [TRIAL] COURT ABUSE ITS DISCRETION IN DENYING THE COMMONWEALTH'S MOTION *IN LIMINE* TO INTRODUCE EVIDENCE OF [APPELLEE'S] PRIOR CRIME AND GRANTING [APPELLEE'S] MOTION *IN LIMINE*, WHERE SAID EVIDENCE IS ADMISSIBLE PURSUANT TO PA.R.E. 404(B)?

(Commonwealth's Brief at 4).

In its sole issue, the Commonwealth argues the facts of the present case and the facts of Appellee's prior rape conviction demonstrate that Appellee engaged in a pattern of non-consensual sexual intercourse with acquaintances who were in an unconscious or diminished state. The Commonwealth contends that in each case, Appellee deliberately took

---

[2] The Commonwealth certified, pursuant to Pa.R.A.P. 311(d), that the court's order would substantially handicap the prosecution.

advantage of the victim's diminished state and inability to consent. The Commonwealth highlights numerous similarities between the two incidents: (1) the victims were the same race and similar in age; (2) both victims were casually acquainted with Appellee; (3) Appellee's initial interaction with each victim was legitimate, where Appellee was invited into the victim's home; (4) Appellee had vaginal intercourse with each victim in her bedroom; (5) both incidents involved vaginal intercourse with an alleged unconscious victim who woke up in the middle of the act; and (6) in each case, Appellee knew the victim was in a compromised state. The Commonwealth asserts the period between the two incidents is only five years, when we exclude the time Appellee spent in prison on the prior rape conviction, and the passage of five years' time is outweighed by the similarities of the two acts. In light of these similarities, the Commonwealth claims Appellee's prior conviction is admissible under the common plan or scheme exception to Rule 404, which generally prohibits evidence of prior crimes.

The Commonwealth further argues Appellee's prior conviction is admissible under the absence of mistake or accident exception, namely, to show Appellee made no mistake when he assessed G.B.'s ability to consent to sexual intercourse. The Commonwealth submits Appellee concedes identity will be a non-issue at trial, so the key issue for the factfinder is whether G.B. consented. The Commonwealth insists evidence of Appellee's prior conviction is necessary to counter Appellee's consent defense and show

that, as in the previous case, Appellee knowingly took advantage of an unconscious victim. For either the common plan or absence of mistake exceptions, the Commonwealth asserts evidence of Appellee's prior conviction would not be unduly prejudicial. The Commonwealth stresses this highly probative evidence would aid the jury in its determination of Appellee's state of mind when he twice initiated vaginal intercourse with G.B.; whereas the absence of this evidence would leave the jury to rely solely on G.B.'s testimony regarding the issue of consent. For all of these reasons, the Commonwealth concludes the trial court abused its discretion when it excluded evidence of Appellee's prior conviction. We agree.

"Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." *Commonwealth v. Drumheller*, 570 Pa. 117, 135, 808 A.2d 893, 904 (2002), *cert. denied*, 539 U.S. 919, 123 S.Ct. 2284, 156 L.Ed.2d 137 (2003) (quoting *Commonwealth v. Stallworth*, 566 Pa. 349, 363, 781 A.2d 110, 117 (2001)); *Commonwealth v. Collins*, 70 A.3d 1254, 1251 (Pa.Super. 2013). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Harris*, 884 A.2d 920, 924 (Pa.Super. 2005), *appeal denied*, 593 Pa. 726, 928 A.2d 1289 (2007).

Relevance is the threshold for admissibility of evidence. ***Commonwealth v. Cook***, 597 Pa. 572, 602, 952 A.2d 594, 612 (2008). Pennsylvania Rule of Evidence 401 provides as follows:

**Rule 401.  Test for Relevant Evidence**

Evidence is relevant if:

(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and

(b)  the fact is of consequence in determining the action.

Pa.R.E. 401.  "Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." ***Drumheller, supra*** at 135, 808 A.2d at 904.   "All relevant evidence is admissible, except as otherwise provided by law.   Evidence that is not relevant is not admissible."  Pa.R.E. 402.  "The court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Pennsylvania Rule of Evidence 404(b) provides as follows:

**Rule 404.  Character Evidence; Crimes or Other Acts**

\*     \*     \*

**(b)   Crimes, Wrongs or Other Acts.**

*(1)   Prohibited Uses.* Evidence  of  a  crime,  wrong,  or

other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

*(2) Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

\* \* \*

Pa.R.E. 404(b)(1)-(2). "[E]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to commit crimes." **Commonwealth v. Melendez-Rodriguez**, 856 A.2d 1278, 1283 (Pa.Super. 2004). Nevertheless, "[e]vidence may be admissible in certain circumstances where it is relevant for some other legitimate purpose and not utilized solely to blacken the defendant's character." **Id.** Specifically, other crimes evidence is admissible if offered for a non-propensity purpose, such as proof of an actor's knowledge, plan, motive, identity, or absence of mistake or accident. **Commonwealth v. Chmiel**, 585 Pa. 547, 889 A.2d 501 (2005). When offered for a legitimate purpose, evidence of prior crimes is admissible if its probative value outweighs its potential for unfair prejudice. **Commonwealth v. Hairston**, 624 Pa. 143, 84 A.3d 657 (2014), *cert. denied*, ___ U.S. ___, 135 S.Ct. 164, 190 L.Ed.2d 118 (2014).

When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to

become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Commonwealth v. G.D.M., Sr.*, 926 A.2d 984, 987 (Pa.Super. 2007), *appeal denied*, 596 Pa. 715, 944 A.2d 756 (2008) (quoting *Commonwealth v. Smith*, 635 A.2d 1086, 1089 (Pa.Super. 1993)).

Although "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." *Commonwealth v. Aikens*, 990 A.2d 1181, 1185 (Pa.Super. 2010), *appeal denied*, 607 Pa. 694, 4 A.3d 157 (2010) (holding evidence of defendant's prior sexual assault was admissible under common scheme exception despite nearly ten-year gap between periods of abuse, where victims were of

- 8 -

similar age and both were daughters of defendant; defendant initiated contact with each victim during overnight visit in his apartment; defendant began sexual abuse by showing victims pornographic movies; and assaults occurred in bed at night). *See also Commonwealth v. Luktisch*, 680 A.2d 877 (Pa.Super. 1996) (holding common scheme exception justified admission of testimony regarding defendant's previous sexual assaults despite six-year lapse between periods of abuse, where three victims were nearly same age, victims were either daughter or step-daughter of defendant and lived with him when acts occurred; and pattern of molestation—from improper touching to oral sex to sexual intercourse—was highly similar with respect to two victims).

Evidence of a prior crime may also be admitted to show a defendant's actions were not the result of a mistake or accident, "where the manner and circumstances of two crimes are remarkably similar." *Commonwealth v. Kinard*, 95 A.3d 279, 294-95 (Pa.Super. 2014). *See Commonwealth v. Sherwood*, 603 Pa. 92, 982 A.2d 483 (2009) (holding evidence of defendant's prior physical assaults of child was admissible to show absence of mistake or accident in prosecution for intentional beating death of child); *Commonwealth v. Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004) (holding evidence of defendant's murder of former wife was admissible to show absence of accident in prosecution for murder of defendant's second wife, where both victims were found dead in bathtub or hot tub in highly similar

circumstances).

Evidence of relevant prior crimes is admissible "if the probative value of the evidence outweighs its potential for unfair prejudice." **Kinard, supra** at 284. "'Unfair prejudice' means a tendency to suggest decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." **Commonwealth v. Dillon**, 592 Pa. 351, 366, 925 A.2d 131, 141 (2007) (quoting Pa.R.E. 403 *comment*).

> Evidence will not be prohibited merely because it is harmful to the defendant. This Court has stated that it is not required to sanitize the trial to eliminate all unpleasant facts from the jury's consideration where those facts are relevant to the issues at hand and form part of the history and natural development of the events and offenses for which the defendant is charged. Moreover, we have upheld the admission of other crimes evidence, when relevant, even where the details of the other crime were extremely grotesque and highly prejudicial.

*Id.* at 367, 925 A.2d at 141. "Additionally, when examining the potential for undue prejudice, a cautionary jury instruction may ameliorate the prejudicial effect of the proffered evidence. … Jurors are presumed to follow the trial court's instructions." **Hairston, supra** at ___, 84 A.3d at 666 (holding extraneous offense of arson was admissible under Rule 404(b) as *res gestae* evidence in prosecution for murder; trial court's instruction on how arson evidence should be considered minimized likelihood that arson evidence would inflame jury or cause it to convict defendant on improper basis).

Instantly, the record reveals the following factual similarities between the present case and Appellee's prior rape conviction. In each case,

Appellee was acquainted with the victim—a black female in her twenties—and he was an invited guest in the victim's home. Appellee was aware that each victim was in a weakened or compromised state. Each victim ultimately lost consciousness. In each case, the victim awoke in her bedroom in the early morning hours to find Appellee having vaginal intercourse with her. The evidence of Appellee's prior rape passes the basic relevance threshold, as it tends to increase the probability that Appellee knowingly had non-consensual sex with G.B. in the present case. **See Drumheller, supra**. The relevant details and surrounding circumstances of each incident further reveal criminal conduct that is sufficiently distinctive to establish Appellee engaged in a common plan or scheme. **See G.D.M., Sr., supra**. The factual overlap between the two incidents goes beyond the commission of crimes or conduct "of the same general class." The evidence does not merely show Appellee sexually assaulted two different women or that Appellee's actions are generically common to many sexual assault cases. To the contrary, the incidents reflect a clear pattern where Appellee was legitimately in each victim's home; Appellee was cognizant of each victim's compromised state; and Appellee had vaginal intercourse with each victim in her bedroom in the middle of the night while the victim was unconscious.[3]

_____

[3] To the extent differences exists between the two incidents, these
*(Footnote Continued Next Page)*

G.B.'s claim, that she again fell asleep and again awoke to find Appellee having non-consensual sex with her a second time, only reinforces the conclusion that Appellee engaged in a common scheme of non-consensual intercourse with unconscious victims. The evidence of a second instance of non-consensual sex between Appellee and G.B. tends to show Appellee saw and seized yet another opportunity to have non-consensual vaginal intercourse with a female acquaintance whose unconscious state rendered her unable to consent or to resist verbally or physically. Additionally, Appellee's dispute that G.B. was asleep, when Appellee initiated sexual intercourse with her, is an issue for the factfinder to determine at trial. The purpose of introducing Appellee's prior conviction is to aid the jury in that determination and to counter Appellee's anticipated defense of consent. Appellee should not be able to create a "difference" between the two incidents simply by disputing the Commonwealth's proffered facts. We conclude the circumstances of each incident are sufficiently similar to satisfy

*(Footnote Continued)* ——————

differences concern details which are not essential to the alleged common scheme of Appellee. For example, Appellee was in T.B.'s home for a party because he was friends with T.B.'s brother, whereas G.B. invited Appellee into her home because she felt weak after donating plasma. The common scheme, however, does not require the sexual assault of women who became tired or weak specifically after donating plasma. The salient facts of each case are that Appellee was allowed into the home of an acquaintance, and Appellee knew each victim was in a compromised state. After each victim lost consciousness in the early morning hours, Appellee had vaginal intercourse with each victim in essentially the same manner. The common scheme exception does not require that the two scenarios be identical in **every** respect.

the common plan or scheme exception to Rule 404.

We further conclude the evidence of Appellee's prior rape conviction is not too remote in time to negate its probative value. The Commonwealth is correct to state that Appellee's time spent in prison must be excluded in the calculation of how much time has elapsed since the prior crime. **See Commonwealth v. Rush**, 538 Pa. 104, 646 A.2d 557 (1994) (excluding defendant's period of incarceration from relevant time period for remoteness analysis, where eight years separated commission of crimes in question); **Commonwealth v. Brien**, 836 A.2d 966 (Pa.Super. 2003), *appeal denied*, 577 Pa. 695, 836 A.2d 966 (2004) (holding defendant's prior ten-year old convictions were not too remote in time, and defendant was paroled five years before the current offense). Appellee committed the prior offense ten years before the current incident, but Appellee was incarcerated for five of those years for the prior offense. Therefore, the relevant look-back period is five years for purposes of the remoteness analysis. **See id.** This Court has held evidence admissible under the common scheme exception in the context of even longer time lapses. **See Aikens, supra** (holding ten-year lapse was not excessive); **Luktisch, supra** (holding six-year lapse was not excessive). Additionally, the similarities of the two incidents render the five-year time gap even less important. **See Aikens, supra**. The record does not support a finding of an excessive lapse of time between the incidents, which is, in any case, only one factor in the common scheme analysis, but

not the dispositive factor.

Additionally, the probative value of Appellee's prior conviction outweighs its potential for unfair prejudice. The prior conviction should not be shielded from the factfinder merely because it is harmful to Appellee; the question is whether evidence of Appellee's prior conviction would be **unduly** prejudicial. ***See Dillon, supra***. The substantial similarity between the two incidents gives the evidence of Appellee's previous crime considerable probative value. In light of the important similarities, the nature of Appellee's prior crime alone does not render it unduly prejudicial. ***See Commonwealth v. Frank***, 577 A.2d 609 (Pa.Super. 1990) (holding admission of evidence of appellant's prior sexual assaults of children under common plan exception was not unduly prejudicial where assaults possessed high degree of similarity and court issued cautionary instructions). Moreover, to alleviate the potential for unfair prejudice, the court can issue a cautionary instruction to the jury, to advise the jury of the limited purpose of the evidence and to clarify that the jury cannot treat the prior crime as proof of Appellee's bad character or criminal tendencies. ***See id.***; ***Hairston, supra***. Jurors are presumed to follow the trial court's instructions. ***See id.***

Importantly, one factor in the "undue prejudice" analysis—the Commonwealth's need to present evidence under the common plan exception—weighs heavily in favor of the Commonwealth. Identity is not an issue in this case, as Appellee acknowledges he had sexual intercourse with

G.B. on the day in question. The only issue is consent. If evidence of Appellee's prior conviction is excluded, the Commonwealth must rely solely on the uncorroborated testimony of G.B. to counter Appellee's defense of consent to vaginal intercourse. Thus, the Commonwealth has a significant need for the prior crime evidence to prove Appellee had non-consensual sex with G.B. ***See G.D.M., Sr., supra***. ***See also Commonwealth v. Gordon***, 543 Pa. 513, 673 A.2d 866 (1996) (holding evidence of appellant's similar prior sexual assaults was not unduly prejudicial where Commonwealth was required to prove non-consensual touching occurred; evidence was necessary for prosecution of case, where uncorroborated testimony of victim might lead jury to determine there was reasonable doubt as to whether appellant committed crime). Given the substantial similarity between the current incident and Appellee's prior crime, and the importance of the common scheme evidence to the Commonwealth's case, we conclude the trial court abused its discretion when it found Appellee's prior conviction was inadmissible under the common scheme exception to Rule 404.

Likewise, the trial court should have declared the evidence of Appellee's prior rape conviction admissible under the absence of mistake or accident exception to Rule 404.[4] Appellee disputes G.B.'s account that she

_____

[4] In his motion *in limine*, Appellee completely misconstrued and failed to respond substantively to the Commonwealth's argument regarding the exception to Rule 404 for absence of mistake or accident. Appellee stated:
*(Footnote Continued Next Page)*

was asleep when Appellee initiated sexual intercourse with her—Appellee maintains he thought G.B. consented to the act. Given the relevant similarities between the two incidents, evidence of Appellee's prior rape would tend to prove he did not "mistakenly believe" G.B. was awake or gave her consent. Appellee was invited into G.B.'s home for another reason, Appellee knew G.B. was in a compromised state, and G.B. awoke to find Appellee having vaginal intercourse with her. Appellee's prior conviction would likewise show he had been invited into the home of an acquaintance, knew the victim was in a compromised state, and had non-consensual sex with the victim while the victim was unconscious. The prior conviction would tend to prove Appellee was previously in a very similar situation and suffered legal consequences from his decision to have what proved to be non-consensual vaginal intercourse with an unconscious victim. Thus, the evidence would tend to show Appellee recognized or should have recognized that, as with T.B., G.B.'s physical condition rendered her unable to consent.

*(Footnote Continued)* ———————————

"There is no question in this case as to the identity of [Appellee] and the only reason to introduce the evidence of the prior conviction would be to prove a common plan, despite the limited similarities between the two instances." (Appellee's Motion *in Limine*, filed 6/3/13, at 3; R.R. at 27a). The Commonwealth, however, did not try to introduce evidence of Appellee's prior conviction, under the absence of mistake or accident exception, to prove identity but to show Appellee made no mistake or accident when he evaluated G.B.'s purported "consent." Appellee also failed to address this argument at the hearing on the motions *in limine*. Therefore, Appellee arguably waived any objection to admission of his prior conviction under that exception to Rule 404. **See** Pa.R.A.P. 302(a) (stating issues not raised in trial court are waived and cannot be raised for first time on appeal).

The jury must have a chance to decide if Appellee, in light of his past legal experience and conviction for a substantially similar criminal episode, could have reasonably concluded G.B.'s consent was possible under comparable circumstances.

As with the common scheme exception, certain differences between the two incidents—such as the exact **reason** the victim was in a compromised state—are not essential to the question of whether Appellee mistakenly believed G.B. consented to sexual intercourse. The evidence of Appellee's prior crime is highly probative of the fact that Appellee could not have reasonably believed G.B. was conscious enough to give her consent. Rather, the evidence of the prior conviction tends to prove Appellee intentionally exploited another opportunity to take advantage of a woman sexually, when he knew the woman was in a diminished state. The prior crime at issue fits within the absence of mistake or accident exception to Rule 404. *See Kinard, supra*. Given the established similarity between the incidents, we conclude Appellee's prior conviction is highly probative on the issue of consent, but not so remote in time or unduly prejudicial as to bar its admission under the absence of mistake or accident exception to Rule 404. *See Dillon, supra*; *Aikens, supra*. Our previous analysis of "undue prejudice" and remoteness with respect to the common plan or scheme exception is equally applicable in the context of the absence of mistake or accident exception.

Based on the foregoing, we hold evidence of Appellee's prior conviction is admissible under both the common plan or scheme and the absence of mistake or accident exceptions to Rule 404. Thus, we reverse the trial court's order excluding this evidence.

Order reversed; case remanded for further proceedings. Jurisdiction is relinquished.

Ford Elliott, P.J.E., Panella, Shogan, Mundy and Olson, JJ. join the opinion.

Donohue, J. files a dissenting opinion in which Bender, P.J.E. and Ott, J. join.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/10/2015