J-A04043-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| LOUIS DAWKINS, | |
| Appellee | No. 3564 EDA 2015 |

Appeal from the Order October 29, 2015
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0012294-2011

BEFORE: SHOGAN, J., SOLANO, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED MARCH 27, 2017**

The Commonwealth appeals from the trial court's order denying its motion *in limine* seeking the admission of prior bad acts evidence in its case against Appellee, Louis Dawkins.[1]  We affirm.

We take the relevant facts and procedural history of this matter from our independent review of the certified record.  This case arises from Appellee's alleged straw purchases, in coordination with co-defendant Edroy Wigfall (Wigfall), of three firearms through Tracey Barats (Barats) in January of 2011.  At that time, Barats was residing with a friend, Jill Johnson

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The Commonwealth has certified that the court's order terminates or substantially handicaps the prosecution.  **See** Pa.R.A.P. 311(d).

(Johnson), an associate of Appellee and Wigfall. On January 11, 2011, while speaking with Johnson over the telephone, Wigfall asked her to purchase a gun, and she declined. Johnson then asked Barats, who was present in the room with her, to purchase the gun, and Barats assented. Wigfall picked Barats up at Johnson's residence and began to drive her to a gun shop to purchase a firearm. Wigfall then called Appellee and arranged for him to bring Barats to the gun shop instead. Appellee gave Barats money to purchase the gun, and she filled out the requisite paperwork at the shop. Barats picked up the gun the following day, and gave it to Appellee. Barats was not compensated for the transaction.

A few days later, on January 14, 2011, Appellee and Wigfall contacted Barats and Johnson and informed them that a gun shop was having a sale. Appellee gave Barats money to purchase two firearms, and she completed the purchase after filling out the associated paperwork. Appellee provided Barats with two grams of cocaine after the transaction.

When police arrested Wigfall, they recovered a gun box from his home. Police traced the serial number on the gun box to a firearm Johnson had purchased on June 2, 2005. Police did not recover from the home any of the guns Barats purchased in 2011.

During the police investigation, Johnson provided inconsistent information regarding four gun purchases she made in 2005. In an October 4, 2011 statement, Johnson indicated that she purchased the guns in 2005 for her own personal use, and not for someone else. (**See** N.T. Hearing,

- 2 -

8/25/15, at 6-8). Years later, on September 10, 2015, Johnson gave a statement indicating that she purchased four firearms for Appellee and Wigfall in 2005. (**See** Johnson Interview, 9/10/15, at 1-3). However, Johnson did not remember actually purchasing two of the firearms, and she attributed her faulty memory to oxycodone use. (**See id.** at 2).

The Commonwealth filed an information charging Appellee with numerous offenses in connection with the 2011 firearms purchases, including person not to possess a firearm, criminal conspiracy, and unsworn falsification to authorities. On August 24, 2015, the Commonwealth filed a motion *in limine* seeking to admit prior bad acts evidence at trial indicating that Johnson purchased four firearms for Appellee and Wigfall in June of 2005. **See** Pa.R.E. 404(b). The trial court denied the Commonwealth's motion on October 29, 2015, following a hearing. This timely appeal followed.[2]

The Commonwealth raises the following question for our review:

> Did the [trial] court err in excluding evidence of [Appellee's] prior illegal purchases of handguns—committed with two of the same co-conspirators—which was relevant to establish the existence of a conspiracy, to place the cooperating witnesses' testimony in context, and to show a common plan, scheme or design?

_____

[2] The Commonwealth filed a concise statement of errors complained of on appeal contemporaneously with its notice of appeal. **See** Pa.R.A.P. 1925(b). The court entered a Rule 1925(a) opinion on May 5, 2016. **See** Pa.R.A.P. 1925(a).

(Commonwealth's Brief, at 4).

In its issue on appeal, the Commonwealth challenges the trial court's ruling that evidence relating to Appellee's involvement in the 2005 firearms purchases by Johnson was inadmissible at his trial on the 2011 offenses. (*See id.* at 13). The Commonwealth argues that the evidence is admissible as a prior bad act pursuant to Pa.R.E. 404(b)(2), and is relevant to inform the jury of the complete story of this case, to place Johnson's and Barats' accounts in context, and to reveal a common scheme, plan, or design between the 2005 and 2011 purchases. (*See id.* at 13-29). This issue merits no relief.

Our standard of review is as follows:

> Questions concerning the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. [I]f in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. Sitler*, 144 A.3d 156, 163 (Pa. Super. 2016) (*en banc*) (citations and quotation marks omitted).

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015) (*en banc*), *appeal denied*, 128 A.3d 220 (Pa. 2015) (citation omitted). "Evidence is relevant if it logically tends to establish a material fact in the case, tends to

make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact." *Id.* (citation omitted). "All relevant evidence is admissible, except as otherwise provided by law." *Id.* (citation omitted).

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.
>
> The Commonwealth must prove beyond a reasonable doubt that a defendant has committed the particular crime of which he is accused, and it may not strip him of the presumption of innocence by proving that he has committed other criminal acts.
>
> \* \* \*
>
> The purpose of Rule 404(b)(1) is to prohibit the admission of evidence of prior bad acts to prove "the character of a person in order to show action in conformity therewith." Pa.R.E. 404(b)(1). While Rule 404(b)(1) gives way to recognized exceptions, the exceptions cannot be stretched in ways that effectively eradicate the rule. With a modicum of effort, in most cases it is possible to note some similarities between the accused's prior bad conduct and that alleged in a current case. To preserve the purpose of Rule 404(b)(1), more must be required to establish an exception to the rule—namely a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question. . . .

*Commonwealth v. Ross*, 57 A.3d 85, 98–99, 104 (Pa. Super. 2012) (*en banc*), *appeal denied*, 72 A.3d 603 (Pa. 2013) (case citations and footnote omitted).

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Tyson*, *supra* at 358–59 (citation omitted). "[M]uch more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or theft." *Commonwealth v. Semenza*, 127 A.3d 1, 8 (Pa. Super. 2015) (citation omitted).

"[Our Supreme] Court has also recognized the *res gestae* exception, permitting the admission of evidence of other crimes or bad acts to tell 'the complete story.'" *Commonwealth v. Hairston*, 84 A.3d 657, 665 (Pa.

- 6 -

2014), *cert. denied*, 135 S.Ct. 164 (2014) (citations omitted). "Such evidence may be admitted, however, only if the probative value of the evidence outweighs its potential for unfair prejudice." *Id.* (citation and internal quotation marks omitted). "A final requirement is that if evidence of a prior criminal incident is to be admitted under [an] exception, it must be determined by the court to be established by substantial evidence[.]" ***Commonwealth v. Donahue***, 549 A.2d 121, 127 (Pa. 1988) (citation and emphasis omitted). "[B]efore the evidence is admitted at all, this factor of the substantial or unconvincing quality of the proof should be weighed in the balance." *Id.* (citation omitted).

Instantly, the trial court determined that the evidence at issue was not admissible under the common plan or *res gestae* exception. (***See*** Trial Court Opinion, 5/05/16, at unnumbered pages 3-5). The court further found that the Commonwealth appeared to be advancing a criminal propensity argument regarding Appellee, and that the proffered evidence regarding the 2005 Johnson purchases was unreliable. (***See id.*** at unnumbered pages 5-6). We agree with the trial court.

Specifically, a review of the record demonstrates that any connection between the 2005 and the 2011 firearms purchases is tenuous, and the evidence does not establish any type of signature behavior on the part of Appellee, or a common plan or scheme. Although the Commonwealth repeatedly claims that the "same individuals" and "same purchaser" participated in each incident, (Commonwealth's Brief, at 24-25 (emphasis

omitted); *see id.* at 22), this assertion is belied by the record, which reflects that Barats, the purchaser of the firearms in 2011, is not implicated at all in the Johnson purchases, which occurred six years earlier.

Furthermore, the record supports the trial court's conclusion that the Commonwealth failed to present adequate evidence that the 2005 straw purchases actually occurred. Johnson's 2015 statement implicating Appellee and Wigfall in those purchases directly conflicts with her earlier statement that she purchased the firearms for her own use. Moreover, Johnson's 2015 statement appears unreliable on its face, in that she readily admits that she does not remember purchasing two of the firearms because she "was on Oxys a lot at the time." (Johnson Interview, 9/10/15, at 2). Although police found a gun box linked to a 2005 Johnson purchase in Wigfall's home, they did not recover firearms, and neither Appellee nor Wigfall were prosecuted in connection with the 2005 purchases.

In sum, we conclude that the trial court did not abuse its discretion in declining to admit the prior bad acts evidence proffered by the Commonwealth. *See Sitler*, *supra* at 163. At best, the Commonwealth has shown evidence of only "the mere repeated commission of crimes of the same class," which is insufficient to establish an exception to the general rule barring prior bad acts evidence. *Semenza*, *supra* at 8 (citation omitted). The Commonwealth failed to demonstrate any type of signature or distinctive criminal conduct on the part of Appellee, or establish "a close factual nexus [between the two incidents] sufficient to demonstrate the

connective relevance of" the 2005 Johnson purchases to the instant case. ***Ross***, ***supra*** at 104; ***see also Tyson***, ***supra*** at 358–59. Therefore, the Commonwealth's issue on appeal does not merit relief. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/27/2017