J-S56038-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN ROSS, | |
| Appellant | No. 2100 EDA 2016 |

Appeal from the Judgment of Sentence February 19, 2016
in the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0013294-2012

BEFORE:  BOWES, J., STABILE, J., and PLATT, J.[*]

MEMORANDUM BY PLATT, J.:                    **FILED OCTOBER 18, 2017**

Appellant, John Ross, appeals from the judgment of sentence imposed following his jury conviction of persons not to possess a firearm.[1]  We affirm.

The trial court aptly summarized the factual and procedural history of this case as follows:

> Shortly after midnight on October 13, 2012, Officer James Tumolo ("Officer Tumolo") and his partner, Officer Thomas D'Alesio ("Officer D'Alesio") received a radio call for a person with a gun at 5410 Sharswood Street in Philadelphia, Pennsylvania. The two suspects were described as black males who were wearing dark clothing and had a long gun, presumably a rifle. When the officers arrived at the scene roughly 2-3 minutes after the initial call, Officer Tumolo came into contact with the 911 caller, James Reese, who appeared to be intoxicated. Mr. Reese was initially cooperative, identifying himself as the caller and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 6105(a)(1).

directing the officers to the property at 5410 Sharswood Street, located about five homes from the end of the block. However, Officer Tumolo testified that Mr. Reese eventually refused to cooperate with detectives.

Because several other officers were already stationed at the front of the house, Officer D'Alesio proceeded to the rear of the property to secure the back entrance. Officer Tumolo remained at the front of the house to ensure that no one entered or exited the property. From his vantage point in the back alley, Officer D'Alesio observed trash bags taped over the windows of 5410 Sharswood Street. However, because there were holes in some of the bags, the officer also observed light from the interior of the building, indicating that the house was currently occupied. Roughly 30 seconds after arriving in the back alley, Officer D'Alesio saw the upstairs left-hand window open up. At that time, [Appellant] proceeded to exit through the window onto the porch roof, then from the roof into the backyard. [Appellant] then proceeded to exit the yard through a hole in the fence, eventually running down the alley towards where the officer was standing. When [Appellant] was about 5-10 feet away, Officer D'Alesio turned on his flashlight, retrieved his firearm, and ordered [Appellant] to the ground. [Appellant] complied. At trial, Officer D'Alesio stated that after he frisked [Appellant], he then stated that he did not have any guns. He said, "[T]hey had guns[.] They were robbing me." [(N.T. Trial, 9/29/15, at 53)]. However, Officer D'Alesio also testified that these were not the first words out of [Appellant's] mouth when he came into contact with the officer; rather, this was [Appellant's] response to being frisked. Additionally, other than [Appellant], Officer D'Alesio did not see anyone enter or exit the house during the time that they were on the scene.

After [Appellant] was secured, Officer D'Alesio entered the property through the back door, which led to the kitchen. There, Officer D'Alesio observed that the oven door was open and all of the burners were on; this appeared to be heating the house. Otherwise, the house appeared to be vacant, as there was no furniture or evidence of other personal effects. After clearing the downstairs area, Officer D'Alesio opened the front door to allow his partner and the other officers to enter the house.

The officers proceeded to the second floor of the house, eventually entering the rear bedroom from which [Appellant] had

exited the house moments earlier. Inside the bedroom, there was a SKS-style assault rifle on the floor inside of a trash bag, partially sticking out. Additionally, there was a black revolver handgun on a table, as well as two surgical gloves, one containing a white powder substance and several pills which were confirmed to be generic Percocet. However, the room did not appear to be in disarray.

A search warrant was executed by Detective James Horn, who testified as to the findings at trial. The following items were recovered from the property: (1) black RG Industry model RG23, .22 caliber long rifle with an obliterated serial number loaded with four live .22 caliber rounds; (2) One magazine containing seven 9 millimeter rounds; (3) Brown stock Russian SKS assault rifle 7.62 millimeter loaded with one round in the chamber and 12 in the magazine; (4) two additional magazines for the assault rifle, one empty and one loaded with two live rounds; (5) banana clips; (6) a blue latex glove with white powdery substance. Detective Horn reiterated that the house was not in any state of disarray; rather, it was vacant and generally in poor condition. No currency was found at the scene, nor were any robbery suspects located at the scene or elsewhere. An additional search warrant was executed to collect a sample of [Appellant's] DNA for purposes of comparing the sample with the prints and DNA found on the items recovered from the house. . . .

Crime Scene Investigator Gary Guaraldo testified that he conducted a latent examination on the rifle, the three magazines and the handgun. Although each of the items came back negative, Officer Guaraldo explained that statistically speaking, retrieving a fingerprint from a modern gun is successful less than 10 percent of the time.

\*   \*   \*

On September 29, 2015, [Appellant] appeared before the [trial court] for a jury trial. On that same day, the Commonwealth litigated a motion *in limine* to admit evidence of a shooting that

occurred at 5410 Sharswood Street in [May] 2012,[2] in which [Appellant] sustained a gunshot wound. The Commonwealth argued that the incident was relevant to [Appellant's] relationship to the block and to his access to the property. It sought to include evidence of the incident as a fact, rather than an act on the part of [Appellant]; however, the Commonwealth argued, if the court were to consider the shooting as [Pa.R.E.] 404(b) evidence, it would be permissible to show motive. The motion was granted and the matter proceeded to trial.[3]

(Trial Court Opinion, 2/17/17, at unnumbered pages 1-5) (most record citations omitted).

On October 5, 2015, the jury found Appellant guilty of the above-stated offense. On February 19, 2016, the trial court sentenced him to a term of not less than four and one half nor more than nine years' incarceration. Appellant's timely post-sentence motions were denied by operation of law on June 29, 2016. This timely appeal followed.[4]

Appellant raises one issue for our review:

Did not the trial court err in allowing the Commonwealth to present testimony that [A]ppellant had been previously shot, and his friend killed, in the same neighborhood as the instant incident,

_____

[2] The trial court mistakenly provides a date of October 2012 for the shooting. However, it is clear from the record that the relevant date is May 17, 2012. (**See** N.T. Trial, at 134-35).

[3] At trial, in brief testimony spanning two pages of the trial transcript, Detective Joseph Centeno testified that: he was involved in the investigation of the May 2012 shooting which occurred on the 5400 block of Sharswood Avenue; Appellant was shot in the right arm and thigh; two of his friends also were shot, one fatally; and no one was arrested in connection with the incident. (**See** N.T. Trial, at 134-35).

[4] Appellant filed a timely, court-ordered concise statement of errors complained of on appeal on August 22, 2016. The trial court filed an opinion on February 17, 2017. **See** Pa.R.A.P. 1925.

where such testimony was pure propensity evidence barred by Rule 404(a) of the Pennsylvania Rules of Evidence and failed to satisfy an exception under Rule 404(b), and regardless of the purpose for which the trial court permitted the evidence, it should have been precluded as irrelevant and unduly prejudicial under Rules 404(b)(2) and 403?

(Appellant's Brief, at 3).

In his issue on appeal, Appellant challenges the trial court's admission of evidence regarding the May 2012 shooting. (*See id.* at 12-24). Appellant maintains that this evidence was irrelevant, that it was improper propensity evidence precluded by Pa.R.E. 404(b), and that it was unfairly prejudicial. (*See id.*). We disagree.

Our standard of review is as follows:

Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

*Commonwealth v. Tyson*, 119 A.3d 353, 357–58 (Pa. Super. 2015) (*en banc*), *appeal denied*, 128 A.3d 220 (Pa. 2015) (citations omitted).

"Relevance is the threshold for admissibility of evidence." *Id.* at 358 (citation omitted). "Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence [] and . . . the fact is of consequence in determining the action." Pa.R.E. 401(a)-(b). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. "The court may

exclude relevant evidence if its probative value is outweighed by a danger of . . . unfair prejudice[.]" Pa.R.E. 403. "[A]ll evidence in a criminal proceeding is prejudicial to the defendant, and . . . relevant evidence is to be excluded only when it is so prejudicial that it may inflame the jury to make a decision based upon something other than the legal propositions relevant to the case." *Commonwealth v. Colon*, 846 A.2d 747, 753 (Pa. Super. 2004), *appeal denied*, 870 A.2d 320 (Pa. 2005) (citation and internal quotation marks omitted).

Pennsylvania Rule of Evidence 404(b) provides, in pertinent part:

**(b) Crimes, Wrongs or Other Acts.**

**(1) Prohibited Uses***.* Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) **Permitted Uses***.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1)-(2).

Regarding this rule, "[e]vidence of prior crimes is not admissible for the sole purpose of demonstrating a criminal defendant's propensity to **commit crimes**." *Tyson*, *supra* at 358 (citation omitted; emphasis added).

Evidence of a defendant's prior criminal activity is inadmissible to demonstrate his bad character or criminal propensity.

\* \* \*

- 6 -

It has been succinctly stated that (t)he purpose of this rule is to prevent the conviction of an accused for one crime by the use of evidence that **he has committed other unrelated crimes**, and to preclude the inference that because **he has committed other crimes** he was more likely to commit that crime for which he is being tried. The presumed effect of such evidence is to predispose the minds of the jurors to believe the accused guilty, and thus effectually to strip him of the presumption of innocence.

*Commonwealth v. Cox*, 115 A.3d 333, 337 (Pa. Super. 2015) (*en banc*), *appeal denied*, 124 A.3d 308 (Pa. 2015) (citations omitted; emphasis added).

Here, the Commonwealth presented evidence that Appellant was the **victim** of a shooting, not that "he has committed other unrelated crimes[.]" *Id.* (citation omitted). Rule 404(b) has no applicability in this context. The testimony concerning the shooting was not evidence of any "crime, wrong or act" by Appellant. As a result, the evidence was not inadmissible under Rule 404(b), because this rule was not implicated. *See Commonwealth v. Johnson*, 160 A.3d 127, 146 (Pa. 2017) (concluding that Rule 404(b) was not implicated where the subject testimony was "not evidence of any particular 'crime, wrong or act' by [Appellant].").

Furthermore, the evidence at issue was clearly relevant to the Commonwealth's case against Appellant. As previously noted, "Rule 401 of the Pennsylvania Rules of Evidence provides a broad definition of relevant evidence, as evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or supports a reasonable inference or presumption regarding the existence of a material fact." *Id.* (citation and internal quotation marks omitted). "Even

evidence that merely advances an inference of a material fact may be admissible." **Id.** (citation omitted).

Instantly, the testimony regarding the shooting on the block of the 5410 Sharswood Avenue property was probative to show Appellant's ties to the abandoned house, and that his presence in the area was not random. The evidence also provided a possible explanation for his possession of a gun, for self-protection, in an area where he was recently the victim of a violent crime. Although this evidence may have been harmful to Appellant, it was not so unfairly prejudicial as to necessitate its exclusion, especially in light of the fact that he was the injured party. **See** Pa.R.E. 403; **Colon**, **supra** at 753.

In sum, we conclude that the trial court's admission of the challenged evidence did not constitute a clear abuse of discretion. **See Tyson**, **supra** at 357–58. Therefore, Appellant's issue on appeal merits no relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/18/17