J-A26033-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 773 MDA 2017 |
| KEVIN SCOTT BOWER, JR. | | |

Appeal from the Order Entered April 28, 2017
In the Court of Common Pleas of Clinton County Criminal Division at
No(s):  CP-18-CR-0000536-2015

BEFORE:   BOWES, J., OLSON, J., and RANSOM*, J.

DISSSENTING MEMORANDUM BY BOWES, J.:          **FILED APRIL 16, 2018**

The learned majority concludes that the trial court did not abuse its discretion in denying the Commonwealth's motion to introduce evidence of Appellee's 2009 guilty plea to indecent assault.  Since I believe that the circumstances underlying Appellee's 2009 conviction are significantly similar to the allegations herein, and evince an absence of mistake, I would find that the trial court erred in so ruling.  Thus, for the reasons outlined below, I dissent.

The complaint alleges the following.  On August 9, 2015, the victim, N.D., met with Appellee and a few other friends at a bar in Lock Haven, Clinton County.  N.D. drank a number of alcoholic beverages at that establishment and numerous other bars in the area throughout the course of the night.  At some point during the evening, Appellee took N.D.'s car keys, and indicated

_____
*   Retired Senior Judge assigned to the Superior Court.

that he would drive her vehicle for the remainder of the evening. In the early morning hours of August 10, 2015, Appellee drove N.D. to a park. He then climbed on top of her and indicated that he wished to have sex with her. N.D. stated that she did not want to have sex with him. Nevertheless, Appellee removed one of N.D.'s pant legs and her underwear, penetrated N.D.'s vagina, and ejaculated.

The following day, N.D. contacted the police and sought medical treatment. During the investigation into the incident, the police interviewed Appellee. Appellee's version of the incident substantially deviated from N.D.'s recounting, including an assertion that N.D. had consented to the sexual intercourse. Appellee agreed to a polygraph examination, which subsequently indicated that his version of events was not accurate. Thereafter, during a post-polygraph interview, Appellee admitted that N.D. had expressed "we shouldn't be doing this[.]" Complaint, 11/17/15, at 2. At the preliminary hearing, N.D. indicated that by the end of the night she was "fuzzy" from drinking too much, and reiterated that she did not consent to the sexual act. N.T. Preliminary Hearing, 12/22/15, at 14-16.

Appellee was arrested and charged with sexual assault, aggravated indecent assault without consent, and indecent assault without consent. Prior to trial, the Commonwealth filed a motion, pursuant to Pa.R.E. 404(b), seeking to introduce evidence of a 2009 guilty plea, wherein Appellee pled guilty to indecent assault. The trial court denied that motion, and this timely appeal followed. The Commonwealth certified that the trial court's order terminated

or substantially handicapped its prosecution pursuant to Pa.R.A.P. 311(d), and complied with the trial court's order to file a Rule 1925(b) concise statement of errors complained of on appeal.

The Commonwealth raises one question for our review: "Did the trial court abuse its discretion in denying the Commonwealth's motion to admit other acts evidence associated with [Appellee's] 2009 indecent assault conviction when the facts of [Appellee's] prior case were strikingly similar to the sexual assault charged in the instant matter and were admissible to prove (1) a common plan or scheme and (2) an absence of mistake or consent?" Commonwealth's brief at 4 (some capitalization omitted).

It is well-established that the "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." ***Commonwealth v. Tyson***, 119 A.3d 353, 357 (citation omitted). In this context, "[a]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." ***Id***. at 357-358.

Pennsylvania Rule of Evidence 404 governs the admissibility of past bad acts. It states:

> (1) *Prohibited Uses*. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

> (2) *Permitted Uses*.  This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case, this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1) and (2).

The Commonwealth, relying on **Tyson**, **supra**, sought to introduce evidence of a prior assault committed by Appellee in 2009.  Appellee acknowledged that he pled guilty to indecent assault, but, in his response to the Commonwealth's motion, he contested the purported similarities between that incident and the case *sub judice*.  Appellee appended the 2009 criminal complaint to his response to the Commonwealth's motion.  That document provided the factual underpinning for his guilty plea, and outlined the circumstances surrounding that offense.

The 2009 criminal complaint indicated the following.  On January 17, 2009, Appellee and his ex-girlfriend, J.G., spent an evening out together drinking alcoholic beverages at a local bar in Lock Haven.  J.G. permitted Appellee to stay the night at her residence.  At approximately 3:30 a.m. the following morning, Appellee told J.G. as she tried to sleep that he desired to have sex with her.  He then rolled her onto her side, pinned her arms down, and pulled down her sweat pants.  J.G. told Appellee to stop, but Appellee persisted.  Ultimately, Appellee succeeded in removing J.G.'s pants and underwear, and while holding her down, penetrated her vagina and ejaculated.

The following morning, J.G. reported the encounter to the police and sought medical treatment. The police interviewed Appellee, who initially stated that the sexual intercourse was consensual. Nonetheless, he conceded that, during the intercourse, J.G. demanded that he stop. Appellee explained that he asked J.G. to allow him to ejaculate, after which, he promised to leave.

The Commonwealth argues that evidence of Appellee's 2009 guilty plea for indecent assault is admissible on two grounds. First, it maintains that the 2009 assault is substantially similar to the matter herein, and thus, indicates a common plan or scheme underlying Appellee's criminal behavior. We observe,

> When ruling upon the admissibility of evidence under the common plan exception, the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator. Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator. Given this initial determination, the court is bound to engage in a careful balancing test to assure that the common plan evidence is not too remote in time to be probative. If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive. Finally, the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact. To do so, the court must balance the potential prejudicial impact of the evidence with such factors as the degree of similarity established between the incidents of criminal conduct, the Commonwealth's need to present evidence under the common plan exception, and the ability of the trial court to caution the jury concerning the proper use of such evidence by them in their deliberations.

*Id*. at 358-359 (citation omitted).

The majority reviewed **Tyson**, **supra**, and noted six factors that this Court found significant in determining whether two crimes were sufficiently similar for admission under the common scheme exception to Pa.R.E. 404(b): 1) the defendant was acquainted with both victims; 2) the victims were of the same age and race; 3) the defendant was an invited guest in each victim's home; 4) the defendant assaulted the victims while they were in a weakened state; 5) each victim lost consciousness; 6) each victim woke in her bedroom early in the morning to find the defendant having vaginal intercourse with her. Majority Memorandum at 7 (citing **Tyson**, **supra** at 360).

The majority examined the supposed similarities between the two situations and concluded that many of the details shared "similarities common to any sexual assault, but nothing so specific as to constitute a common scheme or plan, a signature." Majority Memorandum at 8. It emphasized the trial court's findings that the Commonwealth's motion lacked "information regarding the ages, hair color, racial characteristics, or any other characteristics concerning the alleged victims." *Id*. (citing Trial Court Opinion, 4/28/17, at 3). The trial court also noted that there was "[l]imited information . . . concerning the prior relationship between [Appellee] and the alleged victims." *Id*. The trial court concluded that the Commonwealth failed to establish that the incidents were sufficiently similar, and the majority, without fully explaining its position, agreed with that assessment.

- 6 -

I believe Appellee's 2009 indecent assault on J.G. is sufficiently similar to the case herein as to justify the inclusion of that evidence under Pa.R.E. 404(b). Thus, I would find that the trial court abused its discretion in prohibiting its use. First, I believe the majority relies too heavily on the list of factors that were relevant in *Tyson*, *supra*. Indeed, in *Tyson*, this Court observed that "[t]o the extent differences exists between the two incidents, these differences concern details which are not essential to the alleged common scheme of Appellee . . . . The common scheme exception does not require that the two scenarios be identical in **every** respect." *Tyson*, *supra* at 360 n.3 (emphasis in original). With this in mind, I believe that the case law requires us only to review similarities as they relate to the crime in question, and not to mechanically apply a checklist of possible similarities. That is, we should approach each case with an eye towards the "differences which are essential" to the alleged common scheme. *Id*.

Instantly, the Commonwealth seeks to introduce evidence of Appellee's 2009 conviction for indecent assault to establish that he engaged in a course of conduct with N.D. targeted towards taking advantage of N.D.'s weakened capacity so that he could have sexual intercourse with her. Appellee's alleged behavior on the night in question evinces the predatory nature of an opportunist acting single-mindedly to bring about a specific desired end. In this vein, N.D. claimed that she drank a sufficient amount of alcohol so that she felt "fuzzy," N.T. Preliminary Hearing, 12/22/15, at 14. At some point in the night, Appellee took her car keys, and ultimately, early the following

morning, drove her to a secluded location. Appellee then climbed on top of N.D., pinning her in the passenger seat, removed only as much of her clothing as necessary, penetrated her vagina, and ejaculated, despite N.D. informing him that she did not consent to sexual intercourse.

Similarly, in 2009, Appellee took advantage of J.G.'s inebriated state after a night spent drinking alcohol, and while sleeping over at her house, he initiated sexual contact with her despite J.G.'s indication that she did not want to have sex with him. In order to accomplish this act, Appellee pinned J.G. on her bed and removed only as much of her clothing as necessary. In both cases, Appellee admitted to engaging in sexual intercourse with the victim, but contended that the act was consensual. Only later did Appellee admit that he was aware that the women did not want to have sex with him during the event in question.

Under the Commonwealth's proposed theory, the race and age of the victim, the location of the act, and the relationship between the parties, are not essential to the alleged common scheme. Rather, the significant similarity, in my view, is the manner in which Appellee preyed on his victims and intentionally arranged the circumstances so that he was in a position to take advantage of their weakened state. Indeed, Appellee's single-minded predatory behavior is underscored by his determined effort to engage in vaginal intercourse without removing any more clothing than necessary, and against the wishes of the women involved. The pattern of intentionality

inherent in Appellee's conduct is present in both assaults, and is the most telling aspect of his signature criminal methodology.

After determining that the 2009 indecent assault and the incident herein are sufficiently similar to invoke the common plan or scheme exception to Rule 404(b), I would also find that the 2009 incident was neither too remote in time, nor unduly prejudicial as to warrant exclusion. In **Tyson**, we observed, "remoteness in time is a factor to be considered in determining the probative value of other crimes evidence under the theory of common scheme, plan or design, the importance of the time period is inversely proportional to the similarity of the crimes in question." **Tyson**, **supra** at 359 (citation omitted). In light of Appellee's substantially similar pattern of conduct, I would find the details of the 2009 assault so probative as to outweigh the six-year interval that passed between the events. **Id**. at 361 (finding five-year look-back period not too remote given similarity between offenses).

Finally, I believe that the probative value of the 2009 indecent assault outweighs its prejudicial impact. As noted above, I believe the two situations share significant similarities, which bolsters the probative value of the earlier conviction. In addition, as we noted in **Tyson**, the court may issue a cautionary instruction to the jury, setting forth the limited purposes that this evidence serves. **Id**. at 362. As such, I believe that the potential prejudicial effect of the 2009 incident would be sufficiently curtailed, and is certainly outweighed by its probative value. Hence, for these reasons, I would find that

the trial court abused its discretion in denying the trial court's motion to include evidence of Appellee's 2009 guilty plea for indecent assault.

Next, the Commonwealth asserts that evidence of the 2009 assault is admissible to show Appellee did not mistakenly believe that N.D. had consented to sexual intercourse. We have found that "[e]vidence of a prior crime may also be admitted to show a defendant's actions were not the result of a mistake or accident, 'where the manner and circumstances of two crimes are remarkably similar.'" *Id*. at 359 (citing *Commonwealth v. Kinard*, 95 A.3d 279, 294-95 (Pa.Super. 2014)).

The majority determined that, since it did not find the 2009 and 2015 sexual assaults to be similar, the evidence was not admissible as proof that Appellee did not mistakenly believe that N.D. had consented to sexual intercourse. In addition, it highlighted that "there was little to no testimony regarding J.G.'s consent, state of awareness, or lack thereof during the [2009] assault such that absence of mistake or consent would be relevant." Majority Memorandum at 10.

For the reasons outlined above, I disagree with the majority's conclusion that the two sexual assaults did not share relevant similarities. Moreover, I believe that, since Appellee has been investigated, charged, and convicted of indecent assault after it was determined that he continued engaging in a sexual act without the consent of the victim, such evidence is highly probative of whether he was aware that N.D. did not consent to nearly identical conduct, in similar circumstances, in 2015. Further, the record belies the majority's

- 10 -

conclusion that there is no relevant evidence regarding J.G.'s consent and state of awareness. Appellee provided the court with the criminal complaint that served as the factual basis of his 2009 guilty plea. This document clearly details the early morning encounter, J.G.'s explicit statement that she did not consent, and Appellee's efforts to continue the sexual act despite J.G.'s struggles to avoid it. Hence, I would find that the trial court abused its discretion in this regard, as well.

As I would reverse the trial court's ruling, I respectfully dissent.