J-S39036-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
KIRK DANIEL HAGELSTON, :
:
Appellant : No. 1515 MDA 2017

Appeal from the Judgment of Sentence May 4, 2017
in the Court of Common Pleas of Huntingdon County,
Criminal Division at No(s): CP-31-CR-0000471-2015

BEFORE: STABILE, J., MURRAY, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.: **FILED AUGUST 22, 2018**

Kirk Daniel Hagelston ("Hagelston") appeals from the judgment of

sentence imposed following his convictions of rape of a child, aggravated

indecent assault of a child, and indecent assault of a person less than thirteen

years of age. **See** 18 Pa.C.S.A. §§ 3121(c), 3125(b), 3126(a)(7). We affirm

in part, vacate in part, and remand with instructions.

In July 2015, Hagelston was charged with the above-mentioned crimes,

arising from sexual offenses he had committed against his former paramour's

daughter, W.D. (born in December 2001), in July 2011.[1] Prior to trial,

Hagelston filed a Motion *in limine*, seeking permission to elicit testimony from

W.D. concerning sexual abuse by another adult, and her failure to disclose

that ongoing abuse at the time she reported the abuse perpetrated by

_____

[1] W.D. reported the incident to a school counselor in approximately February
or March of 2015.

Hagelston. The trial court heard argument on the matter, and ruled that Hagelston could cross-examine W.D. based on prior inconsistent statements, but could not raise an issue relating to abuse by another individual. The trial court summarized W.D.'s trial testimony as follows:

1. At the time of trial, [W.D.] was 15 years old[,] with a date of birth of [December] 2001.

2. [Hagelston] was previously in a relationship with [W.D.'s] mother.

3. [W.D.] was "around six, seven, eight" when [Hagelston] lived in the same residence as [W.D.], [her] sister and [her] mother.

4. [W.D.] testified that on the date of the crimes, [Hagelston] "shook [her] awake" and "grabbed [her] arm and pulled [her] down the stairs."

5. [W.D.] then testified that [Hagelston] took her onto the front porch and to the side of the house.

6. [W.D.] detailed the assault that occurred. Specifically, [W.D.] testified that [Hagelston] forcefully:

a. "pinched [her] vagina … with his fingers[,]" and

b. "whenever he was done doing that he moved his hand and he like pushed [her] up a little bit and put his penis in [her] vagina."

Trial Court Opinion, 9/1/17, at 1. A jury found Hagelston guilty of all charges. The trial court deferred sentencing, and ordered a pre-sentence investigation report, as well as an assessment by the Sexual Offenders Assessment Board ("SOAB").

On May 4, 2017, the trial court sentenced Hagelston to an aggregate term of 17 to 37 years in prison, with an effective date of July 31, 2015. The

trial court also ordered Hagelston to comply with lifetime registration and reporting requirements as a sexual offender.[2, 3]   Hagelston filed a Post-Sentence Motion, which the trial court denied.  Hagelston thereafter filed a timely Notice of Appeal and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Hagelston now raises the following issues for our review:

I. Did the trial court commit reversible error in barring [Hagelston] from introducing evidence that, at the time [W.D.] made her allegations against [Hagelston], she failed to disclose ongoing sexual abuse committed by another adult?

II. Must that part of the sentence which imposes sexual offender registration requirements be vacated as illegal?

III. Did the trial court abuse its discretion by erroneously denying the [M]otion for a new trial based on the claim that the guilty verdicts were against the weight of the evidence?

Brief for Appellant at 5.

_____

[2] It is unclear from the record whether the trial court imposed the registration requirements under Megan's Law II, 42 Pa.C.S.A. § 9797 *et seq.*, or the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10-9799.41.  The Guideline Sentence Form indicates that Hagelston is a Tier III offender under Megan's Law, and the Sentencing Order states that Hagelston is subject to Megan's Law registration requirements.  However, the trial court stated, on the record, at the conclusion of trial and during the sentencing hearing, that Hagelston would be subject to lifetime registration under SORNA.  Additionally, the trial court's January 25, 2017 Order directs the SOAB to conduct an assessment pursuant to SORNA, and its Rule 1925(a) Opinion states that the registration requirements were imposed under SORNA.

[3] Although the SOAB's assessment is not included in the certified record, Hagelston acknowledges in his brief that he was not designated a sexually violent predator.

In his first claim, Hagelston asserts that the trial court erred in precluding him from questioning W.D. about her failure to disclose ongoing sexual abuse by another adult at the time she reported the assault by Hagelston. *Id.* at 9. Hagelston claims that such evidence would allow him to establish a motive for W.D. to falsely accuse him of sexual abuse, and to attack W.D.'s credibility. *Id.*; *see also id.* at 10 (wherein Hagelston argues that he should have been permitted "to explore [W.D.'s] motive in shielding the man with whom she had an ongoing relationship[,] which including [*sic*] repeated incidents of sexual assault over a number of months."). Hagelston contends that W.D.'s credibility was a central issue at trial, and therefore, he should have been permitted to present "a coherent theory as to the motive of [W.D.] to make a false accusation of sexual assault against Hagelston[.]" *Id.* at 12. Additionally, Hagelston asserts that the trial court's ruling effectively prevented him from presenting a defense. *Id.* at 12-13.

Our standard of review concerning the admissibility of evidence is well settled:

> With regard to the admission of evidence, we give the trial court broad discretion, and we will only reverse a trial court's decision to admit or deny evidence on a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error in judgment, but an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of the record.

*Commonwealth v. Talbert*, 129 A.3d 536, 539 (Pa. Super. 2015) (citation omitted).

- 4 -

"Relevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358 (Pa. Super. 2015); *see also* Pa.R.E. 402. "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action." Pa.R.E. 401; *see also Tyson*, 119 A.3d at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact."). However, "[t]he court may exclude relevant evidence if its probative value is outweighed by the danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Here, Hagelston cites the Pennsylvania Supreme Court's decision in *Commonwealth v. Johnson*, 638 A.2d 940 (Pa. 1994), in support of his argument that evidence of W.D.'s failure to disclose sexual abuse by another adult should have been admitted at trial. In *Johnson*, our Supreme Court

held that, in a prosecution for sexual offenses, the Rape Shield Law[4] does not bar the admission of evidence regarding a prior sexual assault suffered by the victim. *Johnson*, 638 A.2d at 941; *see also id.* at 942 (stating that "[t]o be a victim is not 'conduct' of the person victimized."); *id.* (stating that where the Rape Shield Law does not apply, the evidence must be evaluated under the traditional rules of evidence). However, "[i]f the offer of proof shows only that others in addition to the defendant had sexual contact with the victim, but does not show how the evidence would exonerate the defendant, evidence of prior sexual activity is inadmissible under the Rape Shield Law." *Commonwealth v. Fink*, 791 A.2d 1235, 1242-43 (Pa. Super. 2002).

The trial court considered Hagelston's first claim, and stated the following:

> Based on the proffer of [Hagelston], [the trial court] rejected the evidence as highly speculative and likely to confuse. As [the trial court] permitted cross-examination of [W.D.] regarding "prior inconsistent statements," [Hagelston], therefore, had a sufficient means of proving bias or motive and to challenge

---

[4] The pertinent portion of the Rape Shield Law provides the following:

**§ 3104. Evidence of victim's sexual conduct**

**(a) General Rule.—**Evidence of specific instances of the alleged victim's past sexual conduct, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged victim's past sexual conduct shall not be admissible in prosecutions under this chapter except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S.A. § 3104(a).

the credibility of the victim without engaging in an inquiry involving a pending matter that involved molestation at the hands of a man other than [Hagelston].

* * *

While [Hagelston] stretched the boundaries of relevance with his proffer, [the trial court] did not have to pass on the issue of relevancy due to the extremely convoluted and speculative nature of the proposed testimony. The proposed line of questioning would have caused extreme confusion and misled the jury. The inquiry would have, in effect, created [] a second trial attempting to elicit speculative bias and motive testimony from a 15-year-old[,] who has been the victim of abuse at the hands of two men. The focus of the jury's attention had to be on the case being tried, the events when [W.D.] was "around six, seven, eight," and not on the speculative theories addressed in [Hagelston's] [M]otion *in limine*. Cross-examination on two cases[,] which occurred years apart[,] would have placed the jury in the position of attempting to sort out the role of [W.D.] in the molestation in this case as well as her victimization as one of four victims in the [second, unrelated] case. For this reason, the proposed questioning was excluded.

Trial Court Opinion, 9/1/17, at 3-4 (citation and footnote omitted).

Upon review, we agree that such evidence "stretche[s] the boundaries of relevance." *Id.* at 3. Even to the extent that Hagelston's proffer may have been relevant to establish W.D.'s bias against Hagelston, we also agree with the trial court's determination that any such relevance is significantly outweighed by the risk of confusing and misleading the jury. Although Hagelston purports to offer a motive for W.D. to make a false accusation against him, he fails to specifically explain why evidence of the ongoing sexual abuse of W.D. by another man would exonerate him. **See Fink**, 791 A.2d at 1243-44; **see also Commonwealth v. Durst**, 559 A.2d 504, 506 (Pa. 1989) (concluding that counsel was not ineffective for failing to introduce evidence

that others may have also had sexual contact with the victim, where "[i]t was not argued how this evidence would prove that [the defendant] did not commit the assaults," and where "there was more than enough evidence produced at trial" to support the trial court's finding that the defendant had committed the assaults). Thus, Hagelston's first claim is without merit.

In his second claim, Hagelston argues that the portion of his sentence imposing sexual offender registration requirements is illegal, and must be vacated. Brief for Appellant at 14. Hagelston cites the Pennsylvania Supreme Court's decision in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017),[5] and argues that SORNA cannot be applied to his case, where his offenses predated SORNA's effective date. Brief for Appellant at 15. Hagelston also argues that because SORNA does not apply to offenses committed before December 20, 2012, and because Megan's Law II had expired before his sentencing, the trial court could not legally impose any sexual offender registration requirements. *Id.* at 14-15.

The Commonwealth argues that Hagelston was sentenced pursuant to Megan's Law II, rather than SORNA, and therefore, the portion of his sentence

_____

[5] In **Muniz**, our Supreme Court held that the registration requirements set forth in SORNA constitute criminal punishment, and therefore, their retroactive application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **Muniz**, 164 A.3d at 1193; **see also id.** at 1196 (explaining that "[t]he *ex post facto* clauses of the United States and Pennsylvania Constitutions are implicated" by SORNA where "application of the statute would inflict greater punishment on appellant than the law in effect **at the time he committed his crimes**." (emphasis added)).

requiring lifetime registration was not rendered illegal by our Supreme Court's decision in **Muniz**.  Commonwealth's Brief at 4.

"When the legality of a sentence is at issue on appeal, our standard of review is *de novo* and our scope of review is plenary."  **Commonwealth v. Mendozajr**, 71 A.3d 1023, 1027 (Pa. Super. 2013) (citation and quotation marks omitted).  "An illegal sentence must be vacated."  **Commonwealth v. Mears**, 972 A.2d 1210, 1211 (Pa. Super. 2009) (citation omitted).

Initially, we reiterate that it is unclear whether the trial court imposed sexual offender registration requirements under Megan's Law II, or under SORNA.  In light of this confusion, and our Supreme Court's disposition in **Muniz**, we vacate the portion of Hagelston's sentence requiring lifetime sexual offender registration, and remand to the trial court for the limited purpose of

determining Hagelston's registration requirements.[6]

In his third claim, Hagelston contends that his convictions were against the weight of the evidence. Brief for Appellant at 16. Hagelston claims that W.D.'s testimony was the only evidence used to establish the elements of the offenses, and that "[t]he other evidence in this case (or lack thereof), including some of the Commonwealth's own evidence, strongly supports an acquittal of Hagelston, if the credibility of the witnesses and the facts of record are properly weighted." *Id.* at 17. Specifically, Hagelston points to five pieces of evidence, which he believes support verdicts of "not guilty" when weighed

---

[6] The trial court correctly points out that both Megan's Law II and SORNA mandate lifetime registration for offenders convicted of rape. *See* Rule 1925(a) Opinion, 11/16/17, at 2; *see also* 42 Pa.C.S.A. § 9795.1(b)(2) (expired); 42 Pa.C.S.A. § 9799.14(d). However, this Court recently noted that "[w]hile SORNA did not enhance the registration period for rape …, it did augment the registration requirements for all Tier III offenders…." *Commonwealth v. Horning*, 2018 PA Super 204, at *4 (Pa. Super. 2018) (citing *Muniz*, 164 A.3d at 1210-11). The *Horning* Court therefore concluded that retroactive application of SORNA to an offender who had committed the relevant offenses (including, *inter alia*, rape) when Megan's Law II was in effect, but had pled guilty and was sentenced after SORNA became effective, constituted a violation of the *ex post facto* clause of the Pennsylvania constitution. *See Horning*, 2018 PA Super 204, at *5; *see also id.* at *5 n.3 (explaining that its disposition, *i.e.*, vacating the judgment of sentence to the extent that it required registration under SORNA, did not preclude the appellant from being required to register as a sexual offender under Megan's Law II). Moreover, we acknowledge that the Legislature recently amended SORNA to address its applicability to offenders who committed an offense "on or after April 22, 1996, but before December 20, 2012." 42 Pa.C.S.A. § 9799.55. The amended version generally requires such offenders to register for a term equivalent to the term called for before SORNA's effective date. *See id.* However, even under the amended version of SORNA, Tier III offenders who committed relevant offenses prior to December 20, 2012, would still be subject to more stringent registration requirements, as compared to Megan's Law II.

properly: (1) a lack of physical evidence of sexual assault; (2) W.D.'s delay in reporting the sexual assault; (3) W.D.'s lack of fear or reluctance to visit Hagelston when he resumed contact with her mother and visitation with her half-siblings; (4) W.D.'s motive to falsely accuse Hagelston in the midst of his custody dispute with her mother; and (5) Hagelston's "convincing[] and forceful[]" denial of the allegations. *Id.* at 18.

We observe the following standard of review:

> The finder of fact—here, the jury—exclusively weighs the evidence, assesses the credibility of witnesses, and may choose to believe all, part, or none of the evidence. Issues of witness credibility include questions of inconsistent testimony and improper motive. A challenge to the weight of the evidence is directed to the discretion of the trial judge, who heard the same evidence and who possesses only narrow authority to upset a jury verdict. The trial judge may not grant relief based merely on some conflict in testimony or because the judge would reach a different conclusion on the same facts. Relief on a weight of the evidence claim is reserved for extraordinary circumstances, when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail. On appeal, this Court cannot substitute its judgment for that of the jury on issues of credibility, or that of the trial judge respecting weight. Our review is limited to determining whether the trial court abused its discretion; the Court's role precludes any *de novo* consideration of the underlying weight question.

*Commonwealth v. Sanchez*, 36 A.3d 24, 39 (Pa. Super. 2011) (internal citations and quotation marks omitted); *see also Commonwealth v. Gibbs*, 981 A.2d 274, 282 (Pa. Super. 2009) (stating that "[w]hen the challenge to the weight of the evidence is predicated on the credibility of trial testimony, our review of the trial court's decision is extremely limited. Generally, unless

the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." (citation omitted)).

Here, Hagelston concedes that the uncorroborated testimony of a sexual assault victim is sufficient to support a guilty verdict, *see* Brief for Appellant at 17 (citing 18 Pa.C.S.A. § 3106), but asks that we re-weigh the evidence and assess the credibility of the witnesses presented at trial. From the verdict, it is apparent that the jury found W.D.'s testimony credible, and we may not reconsider the credibility of that testimony on appeal. *See Sanchez*, *supra*; *Gibbs*, *supra*. Because the evidence supports the jury's verdict, and we discern no abuse of discretion by the trial court, Hagelston's final claim is without merit.

Judgment of sentence affirmed in part and vacated in part. Case remanded with instructions. Jurisdiction relinquished.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/22/2018

- 12 -