J-S38014-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEREK MATTHEW KREIDER | : | |
| | : | |
| Appellant | : | No. 1957 MDA 2019 |

Appeal from the Judgment of Sentence Entered September 13, 2019,
in the Court of Common Pleas of York County,
Criminal Division at No(s): CP-67-CR-0006098-2018.

BEFORE: KUNSELMAN, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.:          **FILED NOVEMBER 17, 2020**

Derek Matthew Kreider appeals from the judgment of sentence imposed following his conviction of flight to avoid apprehension, trial, or punishment.[1] We affirm.

On August 26, 2018, state troopers were in possession of a warrant issued for Kreider's arrest. The trial court summarized the evidence adduced at trial regarding Kreider's conduct when state troopers attempted to execute the arrest warrant.

> Four troopers were dispatched due to the warrant indicating that [Kreider] has violent tendencies and that he is a flight risk. As the troopers approached the residence, the homeowner, Ms. [Amber] Batka, exited the residence and informed them that [Kreider] had gone down to the basement, which caused two of the troopers to

---

[*] Former Justice specially assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. § 5126(a).

run to the back of the house. Finding no one in the basement, the troopers scanned the backyard and observed no one. A cut portion of the backyard led to a creek and then thick grass and [a] four[-]foot fence. Trooper Wildermuth and a Trooper Matthew Kabacinski divided and crossed the creek at opposite ends. Thereafter, Trooper Wildermuth heard Trooper Kabacinski giving verbal commands and, upon his approach, Trooper Wildermuth observed that Trooper Kabacinski had deployed his Taser. Trooper Kabacinski then vaulted the fence and took [Kreider] into custody. Trooper Wildermuth indicated that if someone had been standing up having a cigarette behind the fence[,] then they would have been observed when the officers scanned the backyard and that no one was observed smoking a cigarette. Moreover, no odor of cigarette nor any cigarette butts were observed.

[Ms.] Batka testified that [Kreider] was her former paramour. Ms. Batka told the jury that [Kreider] contacted her on a Friday afternoon and, having nowhere to stay, requested that he be allowed to shower, eat, and sleep before turning himself in on the following Monday. [Kreider's] mother had texted Ms. Batka [indicating that she informed the authorities of Kreider's location and that troopers were *en route* to arrest him]; but Ms. Batka indicated that she did not receive this communication until after [Kreider] had departed with police. [Kreider], however, had used Ms. Batka's phone on the morning in question. The morning of [Kreider's] arrest, Ms. Batka and [Kreider] were arguing as a result of Ms. Batka's desire for [Kreider] to immediately follow through with his plan to proceed to his mother's house in anticipation of turning himself in and [Kreider's] preference to delay. Ms. Batka indicated that she then encountered the police on the way to her car immediately after she had left the company of [Kreider] in the kitchen.

Barbara Hess testified that she is [Kreider's] Mother. Ms. Hess saw her son on the Friday, August 24, when he was in a "sad shape" and when he "couldn't hardly walk." Ms. Hess formed an intention to call the police so that she could be assured that [Kreider] would be alive while safe in custody. On August 26, 2018, Ms. Hess informed the police of [Kreider's] location. Ms. Hess communicated to Ms. Batka that Ms. Hess had informed on her son.

Trooper Matthew Kabacinski was called and he testified that, on August 26, 2018, he responded to [Batka's residence] in New

Freedom following a mother's phone call that her son, for whom a warrant was outstanding, was located at the residence. The warrant indicated violent tendencies, possible drug and alcohol abuse, and an escape risk, which caused four troopers to respond to the residence. In accordance with Trooper Wildermuth's testimony, Trooper Kabacinski indicated that Ms. Batka exited the residence upon the troopers' approach and indicated that [Kreider] had gone down into the basement. Troopers Kabacisnski and . . . Wildermuth then proceeded to the rear entrance of the house. The basement was searched and then Trooper Kabacinski and Trooper Wildermuth split up and canvassed the back yard towards the creek. Trooper Kabacinski followed fresh footprints until he observed movement behind the fence. [Kreider] was then located crouching behind the fence in "kind of an aggressive manner, kind of like a spider." [Kreider] defied commands to get down on the ground and, instead, [Kreider] stood up and would have been easily visible had he been standing up previously. From the warrant[,] the trooper knew what type of person he was dealing with and based upon [Kreider's] actions, the trooper indicated he did not wish to take actions that would put him at a disadvantage. Despite warnings for [Kreider] to get on the ground or be [tased], [Kreider] proceeded to step towards the officer in an aggressive manner, which caused [Kreider] to be tased. Following his arrest [Kreider] requested his vaping apparatus and the trooper did not recall [Kreider] possessing any cigarettes.

[Kreider] testified that he had intended to turn himself in on Monday. [Kreider] further testified that, on the morning of the arrest, he had an argument with Ms. Batka, which caused [Kreider] to leave the residence to smoke a cigarette. [Kreider] indicated that he sat by the creek.

Trial Court Opinion, 3/17/20 at unnumbered 2-3 (citations to the record omitted).

- 3 -

Following this incident, police charged Kreider with flight to avoid apprehension, trial, or punishment.[2]  The matter proceeded to a jury trial in July 2019.  At trial, the Commonwealth moved to exclude any reference to the fact that Kreider was tased before he was arrested.  The defense objected on the basis that the tasing evidence was crucial to the defense theory that Kreider resisted arrest because he did not know that he was being pursued, and that he was not fleeing because he was tased in his chest.  The trial court agreed with the defense, and ruled that the tasing evidence was admissible.  Subsequently, the defense moved to exclude any reference to the fact that the arrest warrant indicated that Kreider had "violent tendencies."  The trial court ruled that this information was admissible, as it explained the course of conduct taken by the troopers, and why a trooper tased Kreider.  At the close of evidence, the jury began its deliberations.  While deliberating, the jury presented the following question to the trial court: "[w]hat are the elements of the crime?  Flight?  Concealment?  Lastly, does it matter as long as he was avoiding arrest?"  N.T., 7/17/19, at 250.  The trial court provided the jury with

_____

[2] Section 5126 defines this crime as follows: "[a] person who willfully conceals himself or moves or travels within or outside this Commonwealth with the intent to avoid apprehension, trial or punishment commits a felony of the third degree when the crime which he has been charged with or has been convicted of is a felony and commits a misdemeanor of the second degree when the crime which he has been charged with or has been convicted of is a misdemeanor.  18 Pa.C.S.A. § 5126(a).  Here, pursuant to the arrest warrant, Kreider had been charged with a felony.  Additionally, the Commonwealth and the defense stipulated that Kreider was convicted of a felony.

a copy of the charge, and told the jury that the question of whether flight or concealment mattered so long as the defendant was attempting to avoid arrest was uniquely the province of the jury to decide. *Id*. at 252. The jury returned the same day with a verdict of guilty. *Id*. at 254.

On September 13, 2019, the trial court sentenced Kreider to serve two to four years in prison. Kreider filed a post-sentence motion which the trial court denied. Kreider filed a timely notice of appeal. Both Kreider and the trial court complied with Pa.R.A.P. 1925.

Kreider raises one issue for our review: "Did the trial court abuse its discretion in allowing testimony that an arrest warrant for Derek Kreider indicated he had 'violent tendencies' where this had no bearing on any matter at issue and served only to prejudice Kreider in a close case?" Kreider's Brief at 4.

Our standard of review concerning the admissibility of evidence at trial is well-settled:

> The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion will not be found based on a mere error of judgment, but rather occurs where the court has reached a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will.

*Commonwealth v. Woodard*, 129 A.3d 480, 494 (Pa. 2015).

Under our Rules of Evidence, "[r]elevance is the threshold for admissibility of evidence." *Commonwealth v. Tyson*, 119 A.3d 353, 358

(Pa. Super. 2015); *see also* Pa.R.E. 402.  "Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence[,] and the fact is of consequence in determining the action."  Pa.R.E. 401; *see also Tyson*, 119 A.3d at 358 (stating that "[e]vidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.").  "Evidence that is not relevant is not admissible."  Pa.R.E. 402.  In addition, "[t]he court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Pa.R.E. 403.

Pa.R.E. 404(b) prohibits the admission of prior crimes, wrongs, or acts "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Pa.R.E. 404(b)(1).  However, such evidence may be admissible for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Pa.R.E. 404(b)(2); *see also Commonwealth v. Drumheller*, 808 A.2d 893, 905 (Pa. 2002) (holding that courts will allow evidence of prior bad acts where the distinct crime or bad act was part of a chain or sequence of events which formed the history of the case and was part of its natural development).  In a criminal case, this type of

evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice. Pa.R.E. 404(b)(2).

Harmless error exists if the Commonwealth proves either: (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. **Commonwealth v. Fulton**, 179 A.3d 475, 493 (Pa. 2018); **see also Commonwealth v. Green**, 162 A.3d 509, 519 (Pa. Super. 2017) (*en banc*) (holding that not all errors at trial entitle an appellant to a new trial, and the harmless error doctrine reflects the reality that an accused is entitled to a fair trial, not a perfect trial).

Kreider contends that the officer's testimony that the arrest warrant indicated that he had "violent tendencies" was irrelevant and extremely prejudicial. According to Kreider, the fact that the arrest warrant indicated he had "violent tendencies" did not make any matter at issue in the case any more or less probable. Kreider faults the trial court's reasoning that the "violent tendencies" evidence was relevant to show why the trooper tased him, and claims that the troopers' states of mind had no bearing on the question of whether Kreider was guilty of flight to avoid apprehension, trial,

or punishment. Kreider argues that the tasing evidence was relevant to show that Kreider was unaware that the officers were pursuing him, and reinforced the defense theory that he resisted because he did not understand why he was being arrested and did not intend to evade them.

Kreider also contends that, even if the challenged evidence had some probative value, any such value was outweighed by its prejudicial nature. According to Kreider, "[t]he admission of this evidence meant that, instead of viewing Kreider as a harmless drug addict who was trying to turn his life around, the jury saw him as a dangerous criminal." Kreider's Brief at 20.

Finally, Kreider argues that the trial court erred in concluding that any error in admitting the "violent tendencies" evidence was harmless because the evidence against Kreider was overwhelming and there was only a fleeting reference to violent tendencies. Kreider claims that the evidence was not overwhelming because the Commonwealth and the defense presented conflicting versions of events, with the officers suggesting that Kreider had fled specifically to avoid them, while Kreider said he had merely gone outside to clear his head after an argument. Kreider further argues that the fact that the jury asked questions about the elements of the crime showed that they hesitated to convict him, even with the "violent tendencies" evidence. Thus, he claims that the error cannot be considered harmless beyond a reasonable doubt.

The trial court considered Kreider's issue and determined that it lacked merit. It reasoned:

> Here, the ultimate issue was whether [Kreider] was attempting to avoid capture; however, [Kreider's] actions formed the circumstantial basis upon which he was convicted. The defense made a tactical, and likely appropriate, decision to inquire into why [Kreider] was tased in his chest. Thus, it was necessary to show why [troopers] showed up in force and why the [troopers] interacted with [Kreider] in the manner they did and how [Kreider] responded. It was therefore important to elicit Trooper Kabacinski's state of mind in producing his Taser. Per the warrant, Trooper Kabcinski's state of mind included that [Kreider] has violent tendencies. The violent tendencies language from the warrant simply formed part of the history and natural development of the facts in this case. This [c]ourt cannot fathom how an overmastering prejudice would result from the introduction of the language of the arrest warrant where the defense turned, in part, upon the tasing of [Kreider] and the Commonwealths' need to respond.
>
> * * * *
>
> [E]ven if the admission of the objected-to language from the arrest warrant was in error, the error was harmless. . . . The jury heard that there was a possibility that [Kreider] was aware, from his [m]other's text message, that the police were *en route* to arrest him. Just as the troopers arrived, [Kreider] proceeded to the basement. Ms. Batka had testified that she encountered police immediately after departing [Kreider's] company. The troopers testified to having **run** around the home to search the basement. Nonetheless, [Kreider] was already across the backyard, beyond a small creek, over a fence, and hidden in some overgrowth. The circumstantial evidence clearly demonstrated that [Kreider] willfully concealed himself or moved within the Commonwealth to avoid apprehension. **See** 18 Pa.C.S.[A.] § 5126(a). It is the properly admitted and uncontradicted temporal evidence that makes the Commonwealth's case so overwhelming. There was simply no time for [Kreider's] story to have been true. Couple this with [Kreider's] aggressive demeanor when he was confronted by the troopers and [Kreider's] guilt is manifest. If there is any prejudicial effect of the warrant describing [Kreider] as having violent tendencies, that effect was insignificant by comparison.

> And any prejudice was further blunted by [Kreider's] own actions in confronting the first trooper in an aggressive fashion that required the usage of a Taser to overcome.

Trial Court Opinion, 3/17/20, at unnumbered 4-5 (emphasis in original).

We discern no abuse of discretion by the trial court in reaching its evidentiary ruling. Here, the Commonwealth sought to exclude from the jury any evidence that Kreider was tased prior to his arrest. Kreider, however, advocated for the admission of Taser evidence, claiming that it was relevant to his defensive theory at trial. Kreider argued to the jury that the reason he resisted arrest and hence, was tased by a trooper, was because Kreider did not understand that he was the subject of an arrest warrant or that he was being pursued by police. Thus, Kreider directly placed at issue in the trial the question of why he was tased. Having created the issue, Kreider cannot claim that the Commonwealth's counter-argument as to why Kreider was tased was wholly irrelevant. *See Tyson*, 119 A.3d at 358 (stating that "[e]vidence is relevant if it logically . . . tends to make a fact at issue more or less probable").

Moreover, as the trial court noted, the evidence that the warrant informed the troopers that Kreider had "violent tendencies" helped to explain the troopers' states of mind in approaching Kreider, the reasons for their particular interactions with Kreider, and especially the decision to use a Taser when Kreider stepped aggressively toward a trooper. *See Drumheller*, 808 A.2d at 905 (holding that courts will allow evidence of prior bad acts where

the distinct crime or bad act was part of a chain or sequence of events which formed the history of the case and was part of its natural development).

Finally, we agree with the trial court that even if its evidentiary ruling could be viewed as an abuse of discretion, it was harmless. As noted above, an error is harmless if the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict. **See Fulton**, 179 A.3d at 493. As explained by the trial court, the evidence of Kreider's flight to avoid apprehension by the troopers was overwhelming. The jury was presented with uncontradicted evidence that, in the brief span of time it took for Ms. Batka to walk from her kitchen to her driveway, where she informed the troopers that Kreider had gone down to the basement, Kreider "was already across the backyard, beyond a small creek, over a fence, and hidden in some overgrowth" in such a manner that he could not be viewed by anyone in Ms. Batka's backyard, including the troopers who had run to the back of the residence. **See** Trial Court Opinion, 3/17/20, at unnumbered 5. The jury was also provided with evidence that Kreider was aware that state troopers were *en route* to Ms. Batka's residence before they arrived, and that he did not want to turn himself in to authorities until the following day. Based on this evidence, the jury could have concluded that, upon receiving notification that authorities were *en route* to Ms. Batka's residence, Kreider formed an intention to avoid apprehension on that evening,

and acted in a manner consistent with his intent to evade arrest by the troopers when they arrived at Ms. Batka's residence.

Finally, any prejudicial effect of the trial court's evidentiary ruling was so insignificant by comparison that the error could not have contributed to the verdict. *See Fulton*, 179 A.3d at 493. During the course of the two-day trial, each trooper made a single, brief reference to the fact that the warrant indicated that Kreider had "violent tendencies." Indeed, Kreider acknowledges that the jury heard of the "violent tendencies" reference on only two occasions, and that it was not "a constant refrain at trial." *See* Kreider's Brief at 17, 22. The jury was not instructed that the elements of the crime charged included violence or violent tendencies. Moreover, the questions posed by the jurors indicate that their focus during their deliberations was on elements that had nothing to do with violence (*i.e.*, flight, concealment, and avoiding apprehension). Thus, we agree with the trial court's determination that any error posed by the court's evidentiary ruling was so insignificant that it could not have contributed to the verdict. Accordingly, we affirm Kreider's judgment of sentence.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>11/17/2020</u>