J-S05007-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA

v.   :

JUSTIN M. BURKE   :

Appellant   :   No. 483 MDA 2021

Appeal from the Judgment of Sentence Entered February 19, 2021
In the Court of Common Pleas of Lancaster County
Criminal Division at No(s): CP-36-CR-0006695-2019

BEFORE: PANELLA, P.J., STABILE, J., and DUBOW, J.

MEMORANDUM BY PANELLA, P.J.:       **FILED MAY 10, 2022**

Justin M. Burke appeals from the judgment of sentence imposed following his convictions of three counts of indecent assault, two counts each of sexual assault, and one count each of rape, involuntary deviate sexual intercourse, and aggravated indecent assault. *See* 18 Pa.C.S.A. §§ 3126(a)(2); 3124.1; 3121(a)(1); 3123(a)(1); 3125(a)(2). Burke argues that the trial court abused its discretion in admitting prior bad acts evidence in the form of testimony from two prior victims to establish an absence of mistake regarding the issue of consent. We reverse and remand for a new trial.

While some of the factual background of the incident is undisputed, the parties vigorously dispute whether the complaining witness, G.E., consented to the sexual activity that occurred.

The parties agree that G.E. met Burke through her boyfriend at a dinner with Burke and Burke's fiancée. Subsequently, the group met on separate occasions, including a trip to Florida in June 2019. Following the trip, Burke asked G.E. if she would like to go with him to purchase fireworks for a July 4th party. G.E. agreed and went to Burke's apartment in Elizabethtown so that they could travel together to get the fireworks. After purchasing the fireworks, G.E. and Burke smoked marijuana in the car.

The material factual dispute begins with what happened when the two arrived at Burke's apartment. G.E. testified Burke suggested that she come inside to see his new puppy and led G.E. to his bedroom. While G.E. was sitting on a chair in the bedroom, Burke began to touch her leg with his feet and eventually picked up her dress with his feet. G.E. testified she told Burke to stop and attempted to leave. However, Burke pulled her onto the bed and raped her despite G.E.'s repeated demands to stop. After Burke ejaculated, G.E. immediately grabbed her clothes and left the apartment.

In contrast, Burke denied that he told G.E. to come to his bedroom. He testified that he opened his bedroom to let his dog out, and that G.E. followed him into the room. He laid down on his bed, while G.E. sat on the floor playing with the dog. According to Burke, G.E. flirted extensively with him and he responded by initiating sexual contact. Burke testified that the contact was consensual. After they had intercourse, Burke stated G.E. cleaned up, grabbed her belongings, and indicated she was leaving before Burke's fiancée arrived.

The following day G.E. reported the rape and submitted to an examination at a local hospital. The examination revealed signs of injury to G.E.'s vagina from the external labia all the way to the cervix. However, the sexual assault examination kit did not reveal any of Burke's DNA. The police subsequently arrested Burke and charged him with numerous crimes.

Prior to trial, the Commonwealth provided a notice of intent to introduce prior bad acts in the form of testimony by M.J. and N.C. under Pa.R.E. 404(b). More specifically, the Commonwealth proffered that M.J. and N.C. would testify Burke had non-consensually touched them on their vaginas and breasts while at a party in a dorm room at Thaddeus Stevens College in 2017. M.J. would testify that Burke escorted her to the bathroom, and while they were returning to his room, Burke put his hands down M.J.'s pants and touched her vagina. M.J. told Burke to stop and he complied. Likewise, N.C. would testify that while Burke escorted her to the bathroom, he touched her breasts and butt, and rubbed against her vagina. After N.C. told Burke to stop, he complied.[1]

The Commonwealth sought to introduce these prior assaults to demonstrate a common scheme, design, or plan of sexually assaulting young women. The Commonwealth asserted  Burke's acts towards all the victims are

---

[1] As a result of these actions, Burke pleaded guilty to two counts of indecent assault.

substantially similar — he was friendly with the victims and once they became comfortable with him, he would take them to an isolated place where he would assault them without their consent. The Commonwealth further argued that the prior offenses were probative of the absence of mistake regarding the victims' consent.

Burke filed a reply to the Commonwealth's notice, arguing that the evidence was inadmissible under Pa.R.E. 404(b). Specifically, Burke asserted that identity is not at issue in the instant case, and the cases were markedly different and not admissible. At a pre-trial conference, the trial court admitted the evidence in limited fashion to address the issue of consent.[2]

At trial, M.J. and N.C. testified consistently with the Commonwealth's proffers. Burke's counsel did not object to the testimony during trial. However, Burke's counsel cross-examined both witnesses, and focused his questioning on eliciting testimony from the victims that Burke immediately stopped touching them when they requested him to stop. The trial court issued limiting instructions to the jury immediately after the women testified, and during the final charge to the jury, that the prior incidents could not be used against Burke in deciding the charges in the instant case except on the issue of whether Burke mistakenly believed G.E. had consented to a sexual act.

_____

[2] This hearing was not transcribed. *See* Brief for Appellant at 10 n.1. However, in a subsequent hearing, the trial court specifically stated, regarding M.J. and N.C., that "the Commonwealth may use the two young ladies from the previous incident relative to the issue of consent." N.T., 10/28/20, at 3.

- 4 -

Following trial, the jury found Burke guilty of the above crimes. The trial court sentenced Burke to an aggregate term of 10 to 20 years in prison, followed by five years' probation. The trial court also found Burke to be a sexually violent predator. Burke filed a post-sentence motion, which the trial court denied. This timely appeal followed.

On appeal, Burke raises the following question for our review: "Did the trial court err in admitting the testimony of M.J. and N.C., where they testified to prior acts of [] Burke which were not admissible pursuant to Pennsylvania Rule of Evidence 404(b)?" Brief for Appellant at 8.

Preliminarily, we must determine whether Burke waived his claim. The trial court found that "since there is no objection to [the prior bad act] evidence during any of the trial proceedings, the issue has not been preserved [for] appellate review." Trial Court Opinion, 5/18/21, at 5. In contrast, Burke argues that he preserved his claim because his counsel objected to M.J.'s and N.C.'s testimony via his reply to the Commonwealth's notice of intent to introduce prior bad acts evidence. **See** Brief for Appellant at 15-16. Citing to Pa.R.E. 103, Burke asserts that because the trial court definitively ruled on the Commonwealth's notice and his answer by admitting the evidence for a limited basis, his claim was properly preserved. **See id.** at 16-17.[3]

_____

[3] The Commonwealth does not argue that Burke's claim is waived on appeal.

A party may claim error in a ruling admitting evidence if the party makes a timely objection, motion to strike, or motion *in limine* and states the specific error. **See** Pa.R.E. 103(a). A timely objection or motion *in limine* may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion. **See** Pa.R.E. 103(b).

Here, Burke's answer to the Commonwealth's notice objected to the introduction of testimony from M.J. and N.C. as inadmissible evidence of prior bad acts under Rule 404(b). The trial court definitively ruled that the evidence was admissible only for the purposes of consent or lack thereof. **See** N.T., 10/28/20, at 3. Consequently, based upon this record, we decline to deem Burke's argument waived for failing to renew his objection to the testimony in question at trial, as the trial court definitively ruled on the evidentiary claim prior to trial. **See** Pa.R.E. 103(b); **Commonwealth v. Manivannan**, 186 A.3d 472, 479 n.2 (Pa. Super. 2018) (citing to Rule 103(b) and concluding that the defendant was not required to renew objection to admission of letter from an internet service provider when letter was admitted into evidence during trial, after the trial court had previously definitively overruled his objection to letter on basis of lack of foundation and hearsay).

We therefore will review the merits of Burke's evidentiary claim. Our standard of review for challenges to the admissibility of evidence is well settled:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record.

**Commonwealth v. Tyson**, 119 A.3d 353, 357-58 (Pa. Super. 2015) (*en banc*) (citations and quotation marks omitted).

> Generally, evidence of prior bad acts or unrelated criminal activity is inadmissible to show that a defendant acted in conformity with those past acts or to show criminal propensity. Pa.R.E. 404(b)(1). However, evidence of prior bad acts may be admissible when offered to prove some other relevant fact, such as motive, opportunity, intent, preparation, plan, knowledge, identity, and absence of mistake or accident. Pa.R.E. 404(b)(2). In determining whether evidence of other prior bad acts is admissible, the trial court is obliged to balance the probative value of such evidence against its prejudicial impact.

**Commonwealth v. Aikens**, 990 A.2d 1181, 1185 (Pa. Super. 2010) (citation omitted). Further, to establish an exception set forth in Rule 404(b)(2), there must be "a close factual nexus sufficient to demonstrate the connective relevance of the prior bad acts to the crime in question[.]" **Commonwealth v. Gilliam**, 249 A.3d 257, 272 (Pa. Super. 2021) (citation omitted).

Here, there is some confusion regarding the purpose of M.J.'s and N.C.'s testimony. In its opinion, the trial court concluded that evidence of the prior crimes was permitted under the common plan exception as well as the mistake or accident as to consent exception. **See** Trial Court Opinion, 5/18/21, at 7-10. However, the trial court explicitly ruled that the testimony in question was admitted for the limited purpose of the issue of whether Burke mistakenly

believed G.E. had consented. **See** N.T., 10/28/20, at 3; **see also** Trial Court Opinion, 5/18/21, at 5. Moreover, the trial court provided cautionary instructions as to the absence of mistake exception only. **See** N.T., 11/4/20, at 303 (instructing the jury after the close of evidence that the testimony of M.J. and N.C. was admitted for the limited purpose of "tending to show the defendant's absence [of] mistake regarding consent. The evidence must not be considered by you in any other way or for any other purpose in deciding the charges in this case."); N.T., 11/3/20, at 186 (instructing the jury following the testimony of M.J. and N.C. that "[t]he fact that there was a prior incident of a sexual nature cannot itself be used against the defendant in deciding these charges except relative to the issue of consent or lack of consent to a sexual act."). Accordingly, the evidence was admitted only pursuant to the absence of mistake exception. Therefore, although Burke argues that the trial court erred in admitting this evidence pursuant to the common plan or scheme exception, **see** Brief for Appellant at 19-21, we will not consider that argument on appeal because the jury was instructed not to consider the evidence for that purpose. **See Commonwealth v. Williams**, 896 A.2d 523, 540 (Pa. 2006).

We therefore turn to the absence of mistake exception. The admission of evidence pursuant to the "absence of mistake" exception "is virtually the same as the common plan or scheme exception; namely, the evidence must be distinctive and so nearly identical as to become the signature of the same

perpetrator, and its probative value must not be undermined by the lapse in time between incidents." ***Gilliam***, 249 A.3d at 272 (citation and quotation marks omitted); ***see also Commonwealth v. Weakley***, 972 A.2d 1182, 1189 (Pa. Super. 2009) (explaining courts must look for similarities in number of factors when comparing methods and circumstances of separate crimes, including "(1) the manner in which the crimes were committed; (2) weapons used; (3) ostensible purpose of the crime; (4) location; and (5) type of victims"). A prior incident of sexual assault can be used to defeat an anticipated defense of consent in a case of sexual misconduct under the absence-of-mistake exception. ***See Tyson***, 119 A.3d at 362-63.

Burke contends that the trial court abused its discretion in allowing M.J. and N.C. to testify as to their prior encounters with Burke under the absence of mistake exception. ***See*** Brief for Appellant at 15, 25. Burke argues that the crimes in question here are significantly different, and therefore M.J.'s and N.C.'s testimony should have been excluded. ***See id.*** at 20-22, 24. More specifically, Burke asserts that he stopped touching M.J. and N.C. immediately when asked to do so, while he allegedly committed forced sexual acts over G.E.'s objections. ***See id.*** at 21-22.

Burke claims that he did not stop the sexual acts with G.E. because she consented through her behavior. ***See id.*** at 21, 23. Burke further argues that his sexual advances on M.J. and N.C. were in a hallway, where anyone could observe the conduct, while he allegedly assaulted G.E. in a private bedroom.

*See id.* at 22. Burke concludes that the admission of the testimony was not harmless, suggesting that it invited the jury to convict him for being a serial sexual predator, rather than a person who committed the acts against G.E. *See id.* at 25.

The trial court found that Burke's primary defense at trial was that G.E. consented to the sex. *See* Trial Court Opinion, 5/18/21, at 7. The trial court found that the testimony of M.J. and N.C. was admissible to disprove Burke's theory that he acted without knowledge of G.E.'s lack of consent. *See id.* at 7, 9-10. The trial court noted that the prior convictions of indecent assault were probative to show that Burke did not mistakenly believe G.E. consented. *See id.* at 9. The trial court opined that the cases were similar, as Burke considered himself friends with the victims and that friendly relationship made it acceptable to touch women because they were "into him." *Id.*; *see also* N.T., 11/4/20, at 235.

The trial court further found that the women in each case did not consent and immediately reported Burke's sexual contacts. *See* Trial Court Opinion, 5/18/21, at 9. The trial court concluded that the evidence would be probative to show that Burke did not mistakenly believe that he had G.E.'s consent for sex because they were friends and hanging out alone. *See id.* at 9-10. Moreover, the trial court highlighted that it provided a limiting instruction on two different occasions during trial; therefore, any prejudice was ameliorated. *See id.* at 10.

Our review discloses that the trial court's analysis is not supported by the record and the law. Here, Burke's actions were not so unusual and distinctive as to overcome the extreme prejudice resulting from such evidence's admission. ***See Tyson***, 119 A.3d at 359 (requiring that the prior bad acts and the incident at issue be "distinctive and so nearly identical as to become the signature of the same perpetrator"); ***see also Commonwealth v. Ross***, 57 A.3d 85, 104 (Pa. Super. 2012) (*en banc*) (noting that the exceptions under Rule 404(b) "cannot be stretched in ways that effectively eradicate the rule"). Indeed, although each victim ostensibly had a friendly relationship with Burke before the sexual abuse occurred, and identified Burke as her abuser, Burke immediately stopped touching M.J. and N.C. after his initial nonconsensual touching but allegedly continued his assault on G.E. despite her protests to stop. Moreover, Burke assaulted M.J. and N.C. in a hallway and touched them on their breasts and vaginas with his hands, while here, the Commonwealth asserts he raped G.E. vaginally in his bedroom.

The similarities between the cases did not manifest a signature method that went beyond ordinary details typical of crimes of this class and fail to reflect an absence of mistake regarding G.E.'s consent. ***See Ross***, 57 A.3d at 103-04 (concluding that the trial court improperly admitted evidence of the appellant's past violent abuse of women as proof of a common scheme to rape and murder the victim, as the prior acts merely showed that the appellant serially abused his paramours but did not show a unique signature relevant to

- 11 -

the victim's murder); *see also Commonwealth v. Miles*, 846 A.2d 132, 136 (Pa. Super. 2004) (stating that in admitting evidence of other crimes, "much more is demanded than the mere repeated commission of crimes of the same class") (citation omitted). In sum, the probative value of this evidence is outweighed by the potential for prejudice to the defense, as it could confuse the jury or result in unfair prejudice, in "suggesting a decision on an improper basis or to divert the jury's attention away from its duty of weighing the evidence impartially." Pa.R.E. 403, cmt. Accordingly, we conclude that the trial court abused its discretion when it determined that such evidence was admissible to prove Burke's absence of mistake regarding G.E.'s consent.

While we typically would go on to assess whether the admission of this evidence was harmless error, the Commonwealth does not develop any argument in that regard. *See Commonwealth v. Brooker*, 103 A.3d 325, 332 (Pa. Super. 2014) (stating it is the Commonwealth's burden to establish that the error was harmless beyond a reasonable doubt). Therefore, we reverse Burke's judgment of sentence and remand for a new trial, where the prior bad acts evidence may not be admitted against Burke to establish an absence of mistake.

Judgment of sentence reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/10/2022