J-S24006-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC MONTAGUE KING | : | |
| | : | |
| Appellant | : | No. 1530 MDA 2022 |

Appeal from the Judgment of Sentence Entered August 25, 2022
In the Court of Common Pleas of Clinton County Criminal Division at
No(s): CP-18-CR-0000002-2021

BEFORE:   BENDER, P.J.E.,  LAZARUS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: SEPTEMBER 11, 2023**

Appellant, Eric Montague King, appeals from the judgment of sentence of an aggregate term of 45 to 90 months' imprisonment, plus three years' probation, imposed after a jury convicted him of three counts of indecent assault and four counts of harassment.  Appellant was also deemed to be a Sexually Violent Predator (SVP), subject to lifetime registration requirements under the Sexual Offenders Registration and Notification Act (SORNA), 42 Pa.C.S. §§ 9799.51-9799.75.  On appeal, Appellant challenges the trial court's denial of his pretrial motion to sever his charges into three separate cases pertaining to each victim in this case, as well as the facial constitutionality of SORNA.  After careful review, we affirm.

Appellant was charged with the above-stated offenses based on evidence that he assaulted three separate women on three different dates in

_____

[*] Former Justice specially assigned to the Superior Court.

Avis, Pennsylvania. Prior to trial, Appellant filed a motion to sever the charges pertaining to each of the three victims. On April 29, 2021, the court filed an opinion and order denying Appellant's motion to sever. Appellant's case proceeded to a jury trial on December 16, 2021. There, the victims each testified.

First, S.G. testified that she lives alone in Avis, Pennsylvania. N.T. Trial, 12/16/21, at 29. S.G. testified that in the "evening time" on September 5, 2020, she "was in [her] yard doing yard work" when a large man came up from behind her and "grabbed [her] breasts." *Id.* at 31, 32, 35, 40. S.G. identified the man who grabbed her as Appellant. *Id.* at 38. S.G. testified that after grabbing her from behind, Appellant tried "to drag [her] to [her] back door." *Id.* at 33. However, S.G. fought him, "trying to get him off of [her]" and, after S.G.'s dogs began barking inside her house, Appellant let her go and "ran off." *Id.* at 33-34, 40. S.G. testified that she had seen Appellant watching her from a dog park next to her house just before the attack. *Id.* at 35-36. S.G. testified that she did not report the attack to police until September 8, 2020, because she "was in shock" and she "couldn't think straight." *Id.* at 31. A few days after she reported the incident to police, she again saw Appellant at the dog park watching her while she was outside. *Id.* at 36-37. She called 911 to report that Appellant "was stalking [her] house." *Id.* at 36.

Second, L.H. testified for the Commonwealth. She explained that in September of 2020, she lived alone in Avis, Pennsylvania. L.H. testified that

on September 23, 2020, she contacted police to report that approximately one week earlier, she had been walking her dog around noon when she met a tall, black man who was also walking dogs. *Id.* at 51, 60, 62. L.H. identified Appellant as the man she met that day. *Id.* at 53. L.H. explained that Appellant asked if he could walk with her, and she yes. *Id.* at 54. As they walked, Appellant "started telling [L.H.] how sexy [she] was and how [she] was turning him on. … [L.H.] told him not to talk to [her] like that, that [she] didn't like it." *Id.* L.H. stated that Appellant continued to talk about sex, saying he wanted to go to her house and have sex with her. *Id.* L.H. told Appellant she was not interested and "stop talking to [her] like that." *Id.* at 55.

L.H. testified that she attempted to walk away from Appellant, but he followed her. *Id.* Because she was afraid to go home with Appellant following her, she continued walking, eventually coming to a ballpark where Appellant asked if she wanted to sit down. *Id.* at 55-56. L.H. testified that once she sat down, Appellant sat right "beside [her] and put his arm around [her] and was rubbing [her] back and touching [her] butt and touching [her] boobs." *Id.* at 56. When Appellant leaned in to kiss her, L.H. turned her head and Appellant "nipped [her] … on the neck." *Id.* L.H. told Appellant to stop and used her arms to block him from touching her breasts. *Id.* at 57, 58. Once L.H. told Appellant she wanted to leave, he said he would stop touching her; however, Appellant continued to tell L.H. that she was "turning him on" and he then "reached down in his pants and started masturbating." *Id.* at 58. At

that point, L.H. got up and left, but Appellant followed her for another 15 or 20 minutes before he told her he wanted to go home and then left. *Id.* at 59.

L.H. testified that she immediately told her neighbor what had happened, but she did not call the police until "about a week or so later." *Id.* at 60. She claimed that she "didn't know what to do" and she did not want to go through "something like this[,]" meaning a trial. *Id.* at 72, 74. However, L.H. "thought about all the other women that walk around Avis[,]" and because she "was concerned … he might do the same to them or maybe something even more[,]" L.H. finally decided to report the incident to police. *Id.* at 74. Several weeks after this incident, L.H. was again walking her dog when she ran into Appellant. *Id.* at 63. Appellant began "hollering to [her]" and approached her, telling her he was sorry and he did not mean to disrespect her. *Id.* at 63-64.

Third, J.H. testified for the Commonwealth. J.H., who was 81 years old at the time of trial, testified that on Wednesday, November 4, 2020, she went alone to a store in Avis, Pennsylvania.[1] *Id.* at 77-78, 79. As she was putting the items she purchased in the trunk of her car, a "black man walked over … [a]nd … said, ['C]an I help you?'" *Id.* at 78. J.H. identified that man in court as Appellant. *Id.* at 80. After Appellant put the items in J.H.'s trunk, he asked

---

[1] We note that the ages of S.G. and L.H. were not testified to at trial, but the trial court's opinion in support of its order denying Appellant's motion to sever the charges indicates that the victims were all older in age. *See* Trial Court Opinion and Order (TCOO), 4/29/21, at 3 (unnumbered) (referring to the victims as "mature women"); *see also* Appellant's Brief at 11 (referring to the victims as "elderly women").

if he could "get in [her] car for five minutes[,]" to which J.H. said no. *Id.* at 78. J.H. testified that Appellant then "attempted to hug me. And he touched me between my legs in my private area, my vagina." *Id.* J.H. got into her car, locked the door, and started "shaking and crying." *Id.* After she sat in her car for a few minutes, she saw Appellant pull out in his vehicle, but "he didn't go anyplace." *Id.* at 81. When J.H. finally pulled out, Appellant followed her through several turns before driving away from her. *Id.* at 81-82. The next day, J.H. called the store and reported the incident, and store employees said they would report it to the police. *Id.* at 80-81. When J.H. had heard nothing from the police by Saturday, she called the police on Monday and talked to an officer about what had happened. *Id.* at 81.

Based on the testimony of these witnesses, the jury convicted Appellant of the above-stated offenses. He was sentenced to the term set forth *supra* on August 5, 2022. That same day, the court designated Appellant as an SVP. Appellant filed a timely, post-sentence motion for modification of his sentence, which the court denied on October 6, 2022. Appellant then filed a timely notice of appeal, and he complied with the trial court's subsequent order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. On December 12, 2022, the court issued a Rule 1925(a) opinion relying, in part, on the April 29, 2021 opinion and order denying Appellant's severance motion. *See* Trial Court Opinion, 12/12/22, at 2.

Herein, Appellant states two issues for our review:

1. Did the trial court err in failing to sever the criminal charges in this matter, despite the fact that witness credibility was the central factual issue to be determined by the jury as no physical evidence existed to substantiate the crimes charged?

2. Is … []SORNA[] unconstitutional on its face and therefore [is] the trial court's designation of [Appellant] as a[n SVP] unconstitutional?

Appellant's Brief at 4.

Appellant first contends that the trial court abused its discretion by denying the motion to sever the charges pertaining to each of the three victims in this case. "[W]hether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." **Commonwealth v. Kurtz**, 294 A.3d 509, 531 (Pa. Super. 2023) (quoting **Commonwealth v. Cousar**, 928 A.2d 1025, 1037 (Pa. 2007) (citation omitted)).

Here, Appellant argues that "the Commonwealth's charges did not involve a common scheme, [or] common location, and … Appellant was clearly unduly prejudiced by the Commonwealth's successful attempt to take the jury's attention off of the fact that there were significant holes in the victim[s'] testimony and place it on the 'cumulative' evidence that … Appellant is simpl[y] a 'monster' preying on elderly women." Appellant's Brief at 11. He insists that, "[t]aken individually," the victims' testimony was "objectively weak[,]" but "when taken one after the other, … Appellant was subjected to testimony that showed a 'propensity to commit criminal conduct' by any

reasonable observer." *Id.* at 12. Thus, he claims that the court denied him a fair trial by failing to sever the charges pertaining to each victim.

Appellant's argument is unconvincing. First, this Court has explained:

Pursuant to Rule of Criminal Procedure 582, "[o]ffenses charged in separate indictments or informations may be tried together if … the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a). Furthermore, under Rule 583, the trial court "may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

> Reading these rules together, our Supreme Court established the following test for severance matters:
>
> Where the defendant moves to sever offenses not based on the same act or transaction that have been consolidated in a single indictment or information, or opposes joinder of separate indictments or informations, the court must therefore determine: [1] whether the evidence of each of the offenses would be admissible in a separate trial for the other; [2] whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, [3] whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Commonwealth v. Ferguson*, 107 A.3d 206, 210-11 (Pa. Super. 2015) (quoting *Commonwealth v. Collins*, … 703 A.2d 418, 422 ([Pa.] 1997)).

Therefore, we must first assess whether the evidence of each of the offenses would be admissible in a separate trial for the others. *Id.* at 211. Generally, pursuant to Rule of Evidence 404, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). However, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or

lack of accident" and where "the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Under the common plan or scheme exception, evidence of other crimes or bad acts may be admitted where "the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator." *Commonwealth v. Tyson*, 119 A.3d 353, 358-59 (Pa. Super. 2015) (*en banc*) (citation omitted). "Relevant to such a finding will be the habits or patterns of action or conduct undertaken by the perpetrator to commit crime, as well as the time, place, and types of victims typically chosen by the perpetrator." *Id.* at 359 (citation omitted). "Sufficient commonality of factors" between the incidents "dispels the notion that they are merely coincidental and permits the contrary conclusion that they are so logically connected they share a perpetrator." *Commonwealth v. Weakley*, 972 A.2d 1182, 1189 (Pa. Super. 2009). "If the evidence reveals that the details of each criminal incident are nearly identical, the fact that the incidents are separated by a lapse of time will not likely prevent the offer of the evidence unless the time lapse is excessive." *Tyson*, 119 A.3d at 359 (citation omitted).

*Kurtz*, 294 A.3d at 532.

In this case, the trial court concluded, in its opinion and order denying Appellant's motion to sever, that the "[t]he offenses are sufficiently linked in time and content so as to be admissible in separate trials to prove a common scheme, plan or design, or identity." TCOO at 3 (unnumbered). It reasoned:

All of the assaults took place in the general vicinity of Avis, Pennsylvania, while the victims were in the community. [Appellant] approached each mature female in the outdoors. The assaults all took place between September 5, 2020[,] and November 4, 2020. As noted, the victims were all female and mature women. The crimes were all committed in a similar manner.

TCOO at 3 (unnumbered).

- 8 -

Notably, on appeal, Appellant provides no developed response to the court's conclusion that the evidence of each assault would have been admissible in a trial for the others to show a common scheme, plan, or design. Instead, he only baldly asserts that the crimes "did not involve a common scheme, [or] common location…." Appellant's Brief at 11. Appellant's cursory argument fails to establish that the trial court abused its discretion in finding that the three assaults in this case show a sufficiently similar plan and design such that "evidence of each of the offenses would be admissible in a separate trial for the other[s]." *Ferguson*, 107 A.3d at 210. As the court pointed out, the victims were all older, adult women who were strangers to Appellant. Each victim was alone outside when Appellant approached them. The actual assaultive acts on the victims were similar, in that Appellant grabbed the victims' private parts over their clothing. After assaulting L.H. and J.H., Appellant followed the women as they fled; after he assaulted S.H., he returned to a park near her home and watched her. Moreover, each assault occurred in Avis, Pennsylvania, during daylight hours, and the assaults were committed extremely close in time, over just a two-month period between September 5th and November 4th of 2020. These similarities are sufficient to demonstrate that the court did not abuse its discretion in finding that the evidence of each assault would be admissible in the trial of the others under the common plan or scheme exception to the rule precluding prior-bad-acts evidence. *Weakley*, 972 A.2d at 1189.

Next, the trial court determined that the evidence related to the three incidents was capable of separation by the jury. *See* TCOO at 4 (unnumbered) (concluding that it had "no concern that the evidence would not be capable of separation by the jury or cause any danger of confusion"). "Our Supreme Court has explained that '[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space[,] and the characters involved, a jury is capable of separating the evidence.'" *Kurtz*, 294 A.3d at 533 (quoting *Collins*, 703 A.2d at 423). Here, the trial court noted that "[t]he facts set forth in the Affidavit of Probable Cause are relatively simple and straightforward and [are] certainly capable of being separated by the jury to the extent that [Appellant] is charged with different crimes involving different victims on different dates and locations." *Id.* We discern no abuse of discretion in the court's conclusion.

Finally, the trial court found that there was no "undue prejudice against [Appellant] by permitting the offenses to remain consolidated." TCOO at 4 (unnumbered). This Court has explained that,

> [f]or the purpose of this analysis, prejudice "is not simply prejudice in the sense that [the] appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of all Commonwealth evidence." *Collins*, 703 A.2d at 423 (citation omitted; emphasis in original). Instead, prejudice is established where the evidence only showed the appellant's "propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." *Id.* (citation omitted).

*Kurtz*, 294 A.3d at 534.

- 10 -

In this case, the evidence of Appellant's three separate assaults did not simply show his propensity to commit crimes. Instead, the evidence established that "Appellant embarked on a two-month spree of sexually assaulting women in broad daylight on the streets of Avis, Pennsylvania." Commonwealth's Brief at 7. The evidence of each assault was not unnecessarily cumulative of the others because the assault on each victim was its own criminal episode, and the jury would naturally understand that the assault against each victim had no bearing on the other(s), but for the common link of Appellant as the perpetrator.

Moreover, we reject Appellant's argument that the victims' delays in reporting the assaults demonstrates that their testimony was so wholly incredible that the jury must have convicted him simply based on a finding that he has the propensity to commit crimes. Each victim explained why they failed to immediately report the assaults, essentially stating that they were shocked, scared, and confused after being assaulted in broad daylight by a complete stranger. The jury was free to accept the victims' explanations for their reporting delays and credit their testimony that Appellant attacked them. In sum, Appellant "created the sequence of events and cannot fairly now demand that the … matters be severed and tried in separate trials." *Ferguson*, 107 A.3d at 212 (citation omitted). Thus, we conclude that the trial court did not abuse its discretion in denying Appellant's motion to sever.

In Appellant's second issue, he contends that SORNA is "unconstitutional on its face and therefore the trial court's designation of Appellant as a[n SVP

is] unconstitutional[.]" Appellant's Brief at 13. In support of this claim,

Appellant presents the following argument, in its entirety:

> It is well-settled that this Court's review of the constitutionality of a statute is *de novo* and the scope of review is plenary. ***Commonwealth v. Beish***, 207 A.3d 964 (Pa. Super. 2018). In the instant matter, Appellant argues that … []SORNA[] is unconstitutional on its face, as it imposes cruel and unusual punishment against … Appellant by imposing a sentence in excess of the statutory maximum sentence. Further, it applies irrebutable [*sic*] presumptions that are not universally applicable and violates United States Supreme Court precedent in ***Alleyne v. United States***, 570 U.S. 99 (2013)[,] and ***Apprendi v. New Jersey***, 530 U.S. 466 (2020). As the [***Commonwealth v.***] ***Torislieri***[, 232 A.3d 567 (Pa. 2020),[2]] matter is currently pending before the Pennsylvania Supreme Court, Appellant raises this issue to preserve his rights under the ***Torsilieri*** decision from the Supreme Court, upon a decision being made.

Appellant's Brief at 13-14 (unnecessary emphasis omitted).

Appellant's undeveloped argument does not permit us to meaningfully review his claim that SORNA is unconstitutional on its face. Thus, we deem his second issue waived. ***See Commonwealth v. Hardy***, 918 A.2d 766, 771 (Pa. Super. 2007) ("When briefing the various issues that have been

---

[2] In ***Torsilieri***, the trial court declared Subchapter H of SORNA unconstitutional under a number of theories, including that it impaired Torsilieri's "right to reputation" under the Pennsylvania Constitution by utilizing an "irrebuttable presumption" that all registrants pose a high risk of recidivism. ***Torsilieri***, 232 A.3d at 574-75. The trial court also concluded that Subchapter H is "punitive" pursuant to the seven factors set forth in ***Kennedy v. Mendoza-Martinez***, 372 U.S. 144 (1963). On appeal, our Supreme Court determined that, while the trial court had correctly considered Torsilieri's scientific evidence, remand was necessary for further development of the record, including "the opposing science, if any…." ***Torsilieri***, 232 A.3d at 596. No subsequent decision in ***Torsilieri*** has yet been issued following the remand.

preserved, it is an appellant's duty to present arguments that are sufficiently developed for our review. The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities. … [W]hen defects in a brief impede our ability to conduct meaningful appellate review, we may dismiss the appeal entirely or find certain issues to be waived.").

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/11/2023